**Sarah BADAHMAN, Respondent,**

v.

**CATERING ST. LOUIS, et al., Appellants.**

No. SC 92796.

Supreme Court of Missouri, En Banc.

April 9, 2013.

David R. Bohm and Laura Gerdes Long, Danna McKitrick PC, St. Louis, for Catering St. Louis.

Gregory A. Rich, Dobson, Goldberg, Berns & Rich LLP, St. Louis, for Badahman.

ZEL M. FISCHER, Judge.

The jury returned a verdict in favor of Sarah Badahman and against Catering St. Louis and its president, Mark Erker (collectively "CSL"), in the amount of $11,250 for compensatory damages and $2,000 for

punitive damages. Badahman filed a motion for additur or, in the alternative, a new trial pursuant to § 537.068,[1] Rule 78.01, and Rule 78.02. The circuit court sustained Badahman's motion and gave the parties 30 days to accept a higher amount of compensatory damages or elect a new trial on these damages only. CSL would not agree to the enhanced compensatory damage award. The circuit court ordered a new trial on the basis that the verdict was against the weight of the evidence. CSL briefed and argued a challenge to the constitutional validity of § 537.068, specifically alleging that permitting a circuit court to increase an award through additur violates the constitutional right to a trial by jury. However, because CSL elected a new jury trial on the issue of damages rather than to accept the circuit court's award of additur, the circuit court's order preserves CSL's right to a jury trial and the sole issue left to be decided in this case is whether or not the circuit court abused its discretion in ordering a new trial. CSL alleges that the circuit court abused its discretion in sustaining Badahman's motion.[2] CSL also argues that the circuit court abused its discretion in ordering a new trial limited to the issue of damages only. The circuit court did not abuse its discretion in sustaining the motion. Affirmed.

## Facts

In 2008, CSL hired Badahman as a recruiter at a yearly salary of $45,000. Her job duties required her to attend job fairs, attend catering events throughout the St. Louis metropolitan area, and have reliable transportation. In July 2008, Badahman, who was diagnosed with epilepsy as a child, learned that her neurologist was suspending her driver's license for a period of at least six months. She continued working at CSL for two more weeks without a driver's license, using alternative modes of transportation to carry out her duties. Badahman met with Erker to discuss whether Badahman would be able to perform her job without a driver's license. They discussed Badahman using taxis, public transportation, rides with the catering van and co-workers, and even the hiring of a private driver. At the end of the meeting, Erker terminated Badahman's employment.

Badahman was unemployed for approximately three months after her termination. She obtained a job at Gateway Healthcare as a practice manager, earning an annual salary of $27,000. Badahman then left that position to become an office manager for Dr. Rashid Dalal, M.D., in Illinois, earning an annual salary of $33,000. At the time of trial, Badahman still held that position.

In September 2009, Badahman filed this action against CSL, pursuant to the Missouri Human Rights Act (MHRA), § 213.010 *et seq.*, alleging CSL discriminated against her because of her disability and retaliated against her in violation of the MHRA.[3] Badahman requested

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. Further, CSL argues that Rule 78.10 violates the constitutional right to a trial by jury because allowing the circuit court to award a new trial on the issue of damages only invades the province of the jury. CSL failed to raise this constitutional issue at the earliest opportunity and, therefore, has waived it. *See, e.g., St. Louis Cnty. v. Prestige Travel, Inc.,*

344 S.W.3d 708, 712 (Mo. banc 2011). More significant to the analysis of this case is that it does not appear the circuit court's order requires a new trial on the issue of punitive damages; therefore, the jury that determined CSL was liable also determined the amount of punitive damages.

3. Badahman's original petition asserted claims against CSL, Erker, and Joan Vosholler, CSL's director of human resources. Ba-

$44,979.72 in lost wages at trial, as well as compensation for emotional harm suffered as a result of her termination. Badahman testified that her actual damages were the difference between $45,000 per year—her projected salary at CSL—and the actual amount of the salaries she received between her termination date and trial. In support of this at trial, Badahman submitted pay stubs, tax documents, and a spreadsheet on which she calculated her damages. CSL did not challenge that Badahman had been out of work for three months or that she later accepted employment at salaries of $27,000 and $33,000. CSL argued that Badahman failed to mitigate her damages [4] and that she would not have been able to perform her duties had she continued her employment at CSL.

The jury returned a verdict against CSL and Erker, awarding Badahman $11,250 in actual damages, or the equivalent of three months of Badahman's salary at CSL. The same jury found CSL liable for punitive damages, but found Erker was not. In a bifurcated proceeding, the jury returned a verdict awarding Badahman $2,000 in punitive damages against CSL.[5] A judgment was entered in accordance with the jury's verdict.

Badahman filed a motion for additur or, in the alternative, a motion for new trial on the issue of damages, pursuant to § 537.068, Rule 78.01, and Rule 78.02.[6] Badahman asserted that she had presented uncontradicted evidence that her actual damages were $44,979.72 and argued that, because there was no basis for the jury awarding her approximately 25% of that amount, the award was against the weight of the evidence. Badahman requested the circuit court increase the jury award to $44,979.12 or grant her a new trial on the issue of compensatory damages. The circuit court sustained the motion. The circuit court's ruling stated that the jury's

dahman voluntarily dismissed the claims against Vosholler. Badahman did not submit her retaliation claim to the jury and proceeded to trial only on her disability discrimination claim.

4. The circuit court did not allow CSL to submit a mitigation instruction to the jury, ruling that there was insufficient evidence to support a finding of failure to mitigate. This issue was not raised on appeal.

5. Section 510.263 states, in the pertinent part:

1. All actions tried before a jury involving punitive damages, including tort actions based upon improper health care, shall be conducted in a bifurcated trial before the same jury if requested by any party.

\*       \*       \*

3. If during the first stage of a bifurcated trial the jury determines that a defendant is liable for punitive damages, that jury shall determine, in a second stage of the trial, the amount of punitive damages to be awarded against such defendant. Evidence of such defendant's net worth shall be admissible during the second stage of such trial.

6. Section 537.068 states:

A court may enter a remittitur order if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages. A court may increase the size of a jury's award if the court finds that the jury's verdict is inadequate because the amount of the verdict is less than fair and reasonable compensation for plaintiff's injuries and damages.

Rule 78.01 states:

The court may grant a new trial of any issue upon good cause shown. A new trial may be granted to all or any of the parties and on all or part of the issues after trial by jury, court or master. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment.

award of $11,250 was "inadequate because it is less than fair and reasonable compensation. It is surely against the weight of the evidence."[7] The parties were granted 14 days, later amended to 30 days, to accept the higher amount of damages or elect to have a new trial on the issue of damages only. CSL would not accept the enhanced compensatory damage award. The previous judgment was set aside, and the circuit court ordered a new trial on the issue of compensatory damages only.

## Section 537.068 Does Not Violate The Right to Trial by Jury

■ CSL alleges that § 537.068 violates the constitutional right to trial by jury. Article I, section 22(a) of the Missouri Constitution states that "the right of trial by jury as heretofore enjoyed shall remain inviolate[.]" Section 537.068 allows the circuit court to "increase the size of a jury's award if the court finds that the jury's verdict is inadequate because the amount of the verdict is less than fair and reasonable compensation for plaintiff's injuries and damages." CSL argues that, because the right to jury trial did not include additur at the time of the adoption of the Missouri Constitution, and the statutes allowing for additur in Missouri allow the circuit court to substitute its judgment as to the proper amount of damages for that of the jury, then § 537.068 and Rule 78.10 violate art. I, sec. 22(a) of the Missouri Constitution.

■ "A statute is presumed to be constitutional and will not be held to be unconstitutional unless it clearly and undoubtedly contravenes the constitution; it should be enforced by the courts unless it plainly and palpably affronts fundamental law embodied in the constitution." *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 828 (Mo. banc 1991). "When the constitutionality of a statute is attacked, the burden is upon the party claiming the statute is unconstitutional to prove the statute is unconstitutional." *Id.* at 828–29. "It is a well accepted canon of statutory construction that if one interpretation of a statute results in the statute being constitutional while another interpretation would cause it to be unconstitutional, the constitutional interpretation is presumed to have been intended." *Id.* at 838–39.

■ "The right to a civil jury trial is a personal right and, therefore, it may be waived." *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 626 (Mo. banc 1997). In Missouri, the circuit court cannot grant a motion for additur without also finding that grounds exist for granting a new trial. "To sustain a motion for additur, a trial court must determine good cause warrants a new trial on damages or the verdict is against the weight of the evidence." *Massman Const. Co. v. Missouri Hwy. & Transp. Com'n*, 914 S.W.2d 801, 803 (Mo. banc 1996) (citing *Tucci v. Moore*, 875 S.W.2d 115, 116 (Mo. banc 1994)). Rule 78.01; Rule 78.02. "A motion for additur focuses on the adequacy of the verdict in terms of damages and, if sustained, has two possible outcomes, an increase in the amount of the verdict upon defendant's consent, or a new trial." *Id.* "When grounds for additur exist, a trial court may grant a new trial only if defendant refuses to accept an increased verdict." *Id.*

The circuit court in this case granted Badahman's motion for additur or, in the alternative, a new trial on the issue of

---

7. "The trial court's specification of a ground for granting [a] motion for new trial ha[s] the effect of overruling other alleged grounds." *Kuzuf v. Gebhardt*, 602 S.W.2d 446, 451 (Mo. banc 1980). Rule 78.02 states: "Only one new trial shall be allowed on the ground that the verdict is against the weight of the evidence."

damages. CSL had two options: it could have accepted the additur amount, thereby waiving its right to a jury trial and accepting the amount determined by the circuit court, or it would have a new jury trial. CSL refused to accept the additur. In this case, the circuit court's order resulted in nothing more or less than a new jury trial on the issue of compensatory damages. The circuit court recognized that conditional additur as authorized by § 537.068 and Rule 78 was not the same additur held to violate the right to jury trial in *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). The order sustaining the motion stated:

> "Additur in Missouri, however, is very different than the additur found wanting in *Dimick.* Although § 537.068 makes no mention of giving either plaintiff or defendant an opportunity to refuse additur, Rule 78.10(b) allows any party the right to reject additur in favor of a new trial. The fault found in *Dimick* was that the additur was not consented to by both parties, *Dimick* at 486–487 [55 S.Ct. 296]. In Missouri, both parties must [ ] agree to the additur. If they do not, there is a new jury trial to assess damages. Therefore, the court rejects the contention that additur violates the Missouri Constitution."

### Appellate Standard of Review on Motions for Additur and, Alternatively, New Trial

■ CSL argues the circuit court abused its discretion in ordering a new trial, after CSL refused additur, because the jury's award was supported by substantial evidence.[8] CSL, relying on *Wiley v. Homfeld,* 307 S.W.3d 145, 148 (Mo.App.

2009), argues that an appellate court reviews the circuit court's decision to order remittitur or additur for abuse of discretion "in the light most favorable to the verdict" and that a circuit court abuses its discretion when it sustains a motion for additur or remittitur where the jury verdict is supported by substantial evidence. However, this is not the proper standard of review in cases where a circuit court has sustained a motion for additur or, in the alternative, a new trial. *Wiley* and other recent appellate court decisions using this standard necessarily conflict with Missouri's established standard of review in cases where a circuit court sustains a motion for new trial on the ground that the verdict is against the weight of the evidence.

This Court, in 1985, abolished the doctrine of remittitur then existing at common law, citing conflicting philosophies, confusion, and inconsistent applications. *Firestone v. Crown Ctr. Redevelopment Corp.,* 693 S.W.2d 99, 110 (Mo. banc 1985). In response, the legislature enacted § 537.068, which statutorily revived the doctrines of remittitur and additur.[9] Section 537.068 allows for remittitur if, "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." Additionally, section 537.068 authorized the circuit court to "increase the size of a jury's award if the court finds that the jury's verdict is inadequate because the amount of the verdict is less than fair and reasonable compensation for plaintiff's injuries and damages."

---

8. There is no doubt the jury may believe all, part, or none of the evidence. *See, e.g., Young v. Kansas City S. Ry. Co.,* 374 S.W.2d 150, 154 (Mo. 1964) (citation omitted).

9. Additur did exist at common law, but cases suggest that Missouri courts did not adopt additur. *Worley v. Tucker Nevils, Inc.,* 503 S.W.2d 417, 424 (Mo. banc 1973).

The doctrine of additur is a corollary of remittitur and encompasses the same principles, so it follows that it may be analyzed in the same way. *Boney v. Worley*, 261 S.W.3d 641, 649 (Mo.App.2008); *Stokes v. Nat'l Presto Indus. Inc.*, 119 S.W.3d 193, 196 (Mo.App.2003); *Norris v. Barnes*, 957 S.W.2d 524, 528 n.3 (Mo.App.1997); *Bishop v. Cummines*, 870 S.W.2d 922, 923 (Mo.App.1994); *Knox v. Simmons*, 838 S.W.2d 21, 23 (Mo.App.1992). This Court, in a rare addendum to its opinion in response to a motion for rehearing, specifically recognized that

> when a trial court grants a new trial on the ground of excessiveness (or inadequacy), it is equivalent to granting a new trial on the ground that the verdict is against the weight of the evidence. The trial court is allowed a wide discretion in granting a motion for a new trial and this is particularly so where the court has ruled the motion upon the amount of the verdict, and thus, upon the weight of the evidence.

> \*     \*     \*

> If the evidence viewed in the light most favorable to upholding the ruling of the trial court, does afford reasonable and substantial support for the trial court's order or remittitur, then there could be no abuse of discretion and the trial court's action must be sustained.

*Steuernagel v. St. Louis Pub. Serv. Co.*, 361 Mo. 1066, 1074–75, 238 S.W.2d 426, 431–32 (banc 1951) (citations omitted). *See also, e.g., Morris v. Israel Bros., Inc.*, 510 S.W.2d 437, 447–48 (Mo. 1974); *Combs v. Combs*, 295 S.W.2d 78, 80 (Mo. 1956); *Sanders v. Ill. Central R.R. Co.*, 364 Mo. 1010, 270 S.W.2d 731, 738 (banc 1954) (overruled in part by *O'Leary v. Illinois Terminal R. Co.*, 299 S.W.2d 873 (Mo. banc 1957)); *Wilhelm v. Haemmerle*, 262 S.W.2d 609, 612–13 (Mo. 1953); *Nix v. Gulf, M & O. R. Co.*, 362 Mo. 187, 240 S.W.2d 709, 712 (1951); *Wicker v. Knox Glass Assocs.*, 362 Mo. 614, 242 S.W.2d 566, 569 (1951).

CSL suggests that this Court, in *Firestone*, rejected the reasoning quoted above in *Steuernagel* and overruled, *sub-silentio*,[10] all prior case law holding that a circuit court's order granting a new trial on the basis that the jury's verdict was excessive or insufficient was to be reviewed in a light most favorable to the circuit court's order. CSL relies on the recent holding of the court of appeals in *Wiley* for this argument. The court of appeals in *Wiley* stated that this Court's "citation to, and reliance on, [*Dodd*] is a clear rejection of *Steuernagel* and the other prior cases that had reviewed remittitur in the light most favorable to the trial court and, as such, has the effect of overruling them sub silentio." *Wiley*, 307 S.W.3d at 148 (citation omitted). However, this Court finds Judge Welsh's dissent in *Wiley* persuasive and informative on this point. *Wiley*, 307 S.W.3d at 156–62 (Welsh, J., dissenting). Judge Welsh stated:

> The Missouri legislature, however, disagreed with the Supreme Court's decision in *Firestone* and reinstated remittitur by enacting section 537.068 in 1987. When the legislature restored the remittitur doctrine, its design was to establish equitable compensation and to eliminate, to

---

10. *Sub silentio* is defined as "without notice being taken or without making a particular point of the matter in question." *Webster's Third New International Dictionary* 2279 (1976). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*." *Keller v. Marion Cty. Ambulance Distr.*, 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting).

the extent possible, the retrial of lawsuits. *Firestone,* therefore, is no longer instructive regarding remittitur cases, and it is disingenuous to contend that it somehow controls the resolution of this case. The *Firestone* opinion has been superseded by section 537.068, and we are not constitutionally bound to follow an opinion of the Missouri Supreme Court that is no longer good law. To cling to the rationale of *Firestone* after the doctrine of remittitur was reinstated is just illogical. Moreover, that *Firestone* may have disapproved of prior remittitur cases decided by the courts and may have wanted to overrule them *sub silentio* does not matter in light of the legislature's enactment of section 537.068. Therefore, the cases interpreting remittitur prior to *Firestone* remain helpful in interpreting section 537.068. *Id.* at 158. (internal quotations and citations omitted).

*Firestone* was based on a common law version of remittitur, but the holdings were legislatively nullified by the enactment of § 537.068. The cases dealing with remittitur and additur predating the statute, while persuasive, are not binding. Further, the holding of *Firestone* and its subsequent interpretation in cases from the court of appeals stems from a misinterpretation of the standard of review, based on a citation, in *Firestone,* to *Dodd v. Missouri–Kansas–Texas R. Co.,* 354 Mo. 1205, 193 S.W.2d 905, 907 (Mo. 1946). As this Court accurately pointed out in *Steuernagel,* the *Dodd* court applied the wrong standard because it used the standard of review to be used by the circuit court in reviewing a motion for remittitur or new trial, not the appropriate standard of review to be used by an appellate court reviewing the circuit court's ruling on the motion. 238 S.W.2d at 431.

�re▄▄▄▄ The circuit court should not sustain a motion for additur or remittitur under § 537.068 without having determined that the verdict is against the weight of the evidence and that the party moving for additur or remittitur is entitled to a new trial.[11] *Massman,* 914 S.W.2d at 803; *Tucci,* 875 S.W.2d at 116. Where, as here, a motion for additur or, in the alternative, a new trial was sustained and a new trial is elected by the parties, the circuit court's order is reviewable under the exact same standard as an order for a new trial on the ground that the jury's verdict is against the weight of the evidence. When the motion for new trial is sustained on the basis that the verdict is against the weight of the evidence, the circuit court's conditional ruling, sustaining the alternative motion for additur or remittitur, pursuant to § 537.068, is inconsequential because the party against whom the motion was sustained has opted for a new trial rather than accepting the additur or remittitur. Such an election renders the motion for additur or remittitur without legal significance and does not affect the determination of whether or not a new trial is warranted in a particular case. This is because the only ruling of the circuit court affecting the parties is the order granting a new trial.

▄▄▄▄▄ In this case, the circuit court's order granting a new trial was on the

---

11. "To sustain a motion for additur, a trial court must determine good cause warrants a new trial on damages or the verdict is against the weight of the evidence." *Massman,* 914 S.W.2d at 803; *Tucci,* 875 S.W.2d at 116; Rule 78.01; Rule 78.02. "A motion for additur focuses on the adequacy of the verdict in terms of damages and, if sustained, has two possible outcomes, an increase in the amount of the verdict upon defendant's consent, or a new trial." *Id.* "When grounds for additur exist, a trial court may grant a new trial only if defendant refuses to accept an increased verdict." *Id.*

grounds that the verdict was against the weight of the evidence. It is well settled in Missouri that a circuit court has broad discretion to grant a new trial on the ground that the verdict is against the weight of the evidence, and its decision will be affirmed by an appellate court absent manifest abuse of that discretion. *Gentry by Gentry v. Douglas,* 744 S.W.2d 788, 789 (Mo. banc 1988); *Clark v. Ford,* 498 S.W.2d 803, 805 (Mo. 1973); *Phillips v. Phillips,* 443 S.W.2d 144, 146 (Mo. banc 1969); *State ex rel. State Highway Com'n v. Vaught,* 400 S.W.2d 153, 155 (Mo. 1966); *Burnett v. St. Louis Pub. Serv. Co.,* 337 S.W.2d 921, 923 (Mo. 1960). The rationale that supports applying this standard of review is that "[t]he trial court is in the best position to weigh the quality and quantity of the evidence and to determine whether justice has been done." *Gentry,* 744 S.W.2d at 790. "If the trial court finds a verdict is against the weight of evidence, it must have the discretion to order a new trial to protect the right to a jury trial." *Id.*[12]

■ In reviewing a circuit court's ruling on the weight of the evidence resulting in remittitur, additur, or the grant of a new trial, appellate courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the circuit court's order. *See, e.g., Morris,* 510 S.W.2d at 447; *Combs,* 295 S.W.2d at 80; *Sanders,* 270 S.W.2d at 738; *Nix,* 240 S.W.2d at 712–13; *Steuernagel,* 238 S.W.2d at 431–32.

■ It is important to note that, when a circuit court *overrules* a motion for additur or remittitur or, in the alternative, a motion for new trial, the proper appellate standard dictates that evidence will be considered in the light most favorable to the verdict. *Collier,* 246 S.W.3d at 925. This is because, where a circuit court overrules such motions, it upholds the verdict of the jury and a review of the evidence in the light most favorable to the jury's verdict is necessarily a review of the evidence in the light most favorable to the circuit court's order. Much of the confusion in prior case law seemed to stem from the adoption of specific language from prior cases, which was technically correct as it pertained to the procedural history of the cases in which it was applied but was not correct as it pertained to the case subsequently adopting it.

To properly allow for the circuit court's discretion in a case where the court has *sustained* a motion for remittitur, additur, or a new trial, a reviewing court may have stated: "We review the evidence in the light most favorable to the moving party." However, to use the same standard where the circuit court has *overruled* the motion for remittitur, additur, or a new trial would be manifestly incorrect, because in such a circumstance the circuit court has upheld the verdict and the proper standard may have stated "We review the evidence in the light most favorable to the verdict." **It is to eliminate such confusion that this Court now holds that the best way to articulate the proper standard of review is that the evidence is reviewed in "the**

---

**12.** This authority was vested in trial courts at common law prior to the adoption of the Missouri Constitution of 1820. "A court could grant a new trial for a variety of reasons. Blackstone wrote: 'a motion for a second trial is the shortest, cheapest, and most effectual cure for all imperfections in the verdict; whether they arise from the mistakes of the parties themselves, of their counsel or

attornies [sic], or even of the judge or jury.' " Suja A. Thomas, *The Seventh Amendment, Modern Procedure, and the English Common Law,* 82 Wash. U.L.Q. 687, 743 (2004) (citing 3 William Blackstone, Commentaries on the Laws of England 393 (Oxford, 2d ed. Clareton Press 1768)). "It was within the 'discretion' of the court to grant a new trial." *Id.* at 744 (citing 3 Blackstone at 392).

light most favorable to the *circuit court's order.*"

To the extent that those prior cases conflict with the standard of review as set out in this opinion, those cases are overruled. The following cases conflict in both the statement of the standard as well as in their application of it: *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99 (Mo. banc 1985); *Dodd v. Mo.-Kan.-Tex. R. Co.*, 354 Mo. 1205, 193 S.W.2d 905 (1946); *Wiley v. Homfeld*, 307 S.W.3d 145 (Mo.App.2009); *Crawford ex rel. Crawford v. Shop 'N Save Warehouse Foods, Inc.*, 91 S.W.3d 646 (Mo.App.2002); *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639 (Mo.App.1997); *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155 (Mo. App.1997).[13]

The following cases are overruled only to the extent that the standard, as stated in its opinion, has added to the confusion of courts adopting it. The cases are correct as applied: *Collier v. City of Oak Grove*, 246 S.W.3d 923 (Mo. banc 2008); *Gomez v. Constr. Design, Inc.*, 126 S.W.3d 366 (Mo. banc 2004); *Alcorn v. Union Pacific R.R. Co.*, 50 S.W.3d 226 (Mo. banc 2001); *Norfolk So. Ry. Co. v. Crown Power & Equipment, LLC*, 385 S.W.3d 445 (Mo.App.2012); *Claus v. Intrigue Hotels, LLC*, 328 S.W.3d 777 (Mo.App.2010); *Brown v. Cedar Creek Rod & Gun Club*, 298 S.W.3d 14 (Mo.App. 2009); *Teets v. Am. Family Mut. Ins. Co.*, 272 S.W.3d 455 (Mo.App.2008); *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 665 (Mo. App.2008); *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493 (Mo.App.2007); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145 (Mo.App.2006); *Knifong v. Caterpillar, Inc.*, 199 S.W.3d 922 (Mo.App.2006); *Ruzicka v. Ryder Student Transp. Servs., Inc.*, 145 S.W.3d 1 (Mo.App.2004); *First State Bank of St. Charles, Mo. v. Frankel*, 86 S.W.3d 161 (Mo.App.2002); *Mo. Dept. of Transp. ex rel. PR Developers, Inc. v. Safeco Ins. Co. of Am.*, 97 S.W.3d 21 (Mo. App.2002); *Brockman v. Soltysiak*, 49 S.W.3d 740 (Mo.App.2001); *Smith v. Wal-Mart Stores, Inc.*, 967 S.W.2d 198 (Mo. App.1998).

■ Badahman submitted evidence, apparently not persuasive to the jury but found to be persuasive by the circuit court, demonstrating the difference in the amount of wages she would have earned between the date of her termination by CSL and the date of trial had she not been terminated and the amount of wages she actually earned in that period of time after her termination. Having reviewed the evidence in the light most favorable to the circuit court's order, the circuit court did not abuse its discretion in granting a new trial on the grounds that the verdict was against the weight of the evidence.

### Trial Court Did Not Abuse its Discretion Granting a New Trial for Damages Only

■ CSL argues that the circuit court abused its discretion in granting a new trial on the issue of damages only, because CSL contends that the issues of liability and damages are significantly intertwined.

■ "When a trial court has acted under its authority to grant a new trial on 'part of the issues,' it is deemed to have determined that injustice to defendant will not thereby result." *Wessels v. Smith*, 341 S.W.2d 104, 106 (Mo.1960) (citation omitted). "Thus, we may not properly hold that a trial court has abused its discretion by granting a new trial on the issue of damages only unless it is made to appear

---

**13.** While it is clear that these cases neither state nor apply the correct standard of review, this Court does not go so far as to state that the outcomes of each case would have been different had the reviewing court applied the correct standard.

upon the record, contrary to the trial court's finding, that the damages issue may not be tried alone without injustice to the defendant." *Id.* (citation omitted). "Where the issue of damages and causation are intertwined, a new trial on all issues is proper." *Zibung v. Union Pacific R. Co.*, 776 S.W.2d 4, 6 (Mo. banc 1989) (citations omitted). "The trial [court] is in the best position to make this judgment and [its] decision should be deferred to." *Id.* "The mere fact that a new trial limited to damages only will require some utilization of the evidence supporting liability is not a sufficient reason to require a new trial on all issues." *Burnett v. Griffith*, 769 S.W.2d 780, 791 (Mo. banc 1989).

To support its contention that the issues are significantly intertwined, CSL argues merely that the circuit court's order sustaining Badahman's motion for additur or, in the alternative, a new trial for damages makes it clear the circuit court questioned the adequacy of the evidence regarding liability. However, all the circuit court's order stated was that "the evidence for liability was far from overwhelming. . . ." Further, CSL does not refer to any specific evidence in its brief demonstrating that the issues for damages and liability are significantly intertwined. To find liability for compensatory damages, the jury had to find: CSL could have reasonably accommodated Badahman by allowing her to use alternative methods of transportation; that, with such accommodation, Badahman's impairment would not have interfered with her ability to perform her job, and; that Badahman's disability was a con-

tributing factor in CSL's decision to discharge Badahman. None of the evidence required to demonstrate liability is the same as the evidence demonstrating Badahman's salary at CSL and her salary in positions subsequent to her termination by CSL.

■ CSL argues the circuit court abused its discretion in granting a new trial on damages because the same jury that determined liability is to assess punitive damages. When a circuit court has sustained a motion for new trial, it is axiomatic that its order must be sustainable on a ground specified in the motion for new trial itself. *See, e.g., Kuzuf*, 602 S.W.2d at 451. Neither Badahman's motion nor the circuit court's order addresses the issue of punitive damages being inadequate.[14] In fact, the motion for additur or, in the alternative, a new trial on the issue of damages addresses only the inadequacy of the verdict regarding compensatory damages. Therefore, the logical conclusion is that the circuit court's order sustaining Badahman's motion for additur or, in the alternative, a new trial on the issue of damages only is an order for a new trial exclusively on the category of compensatory damages, which would leave the jury's determination as to liability and its award of punitive damages undisturbed. This interpretation of the circuit court's order is consistent with Rule 78.10. CSL has not demonstrated how it would be prejudiced by a new trial on compensatory damages only. The circuit court did not abuse its discretion in ordering a new trial on the issue of compensatory damages only.

14. At oral argument before this Court, Badahman's counsel made the following statements:

The motion that [Badahman] filed for additur or for a new trial on the issue of damages only addressed the issue of compensatory damages. * * * [Badahman] did not allege that there was any error with regard to the punitive damages. * * * I don't see

any reason why we need to go back and try the issue of punitive damages. * * * There was no error in regard to that. * * * I don't believe that there's any reason to go back and try punitive damages. I would be happy just to go back and try the compensatory damages because that's the error that I think occurred at trial.

## Conclusion

The circuit court weighed the evidence pursuant to its discretionary authority established by § 537.068 and in accord with Rules 78.01 and 78.02 when it ruled on the motion for additur or, in the alternative, a new trial. Further, because CSL has not demonstrated that the issues of liability and compensatory damages are substantially intertwined, or demonstrated how it would be prejudiced by the circuit court's order, it cannot be said that the circuit court abused its discretion in ordering a new trial on the issue of compensatory damages only. Therefore, the circuit court's judgment is affirmed.

All concur.

