

# SUPREME COURT OF MISSOURI
# en banc

DOUGLAS STEWART, )
)
    Respondent, )
)
vs. )   No. SC94120
)
KRIKOR O. PARTAMIAN, M.D., and )
PHOENIX UROLOGY OF ST. JOSEPH, )
INC., )
)
    Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Honorable Weldon C. Judah, Judge

### *Opinion issued July 21, 2015*

Krikor Partamian, M.D. (Dr. Partamian), and Phoenix Urology of St. Joseph, Inc.

(collectively Appellants), appeal from a judgment awarding $4.3 million to Douglas

Stewart (Respondent) on his claim for medical negligence. Appellants argue that the trial

court abused its discretion in admitting into evidence videotaped deposition testimony

from Dr. John Riordan. Appellants also argue that the trial court abused its discretion by

failing to find that the verdict was excessive due to jury passion and prejudice and

because it exceeded fair and reasonable compensation for Respondent's injuries. Finally,

Appellants argue that the trial court erred in declining to enter an order of remittitur

because section 538.300,[1] which prohibits defendants in medical negligence cases from seeking remittitur, violates the right to a trial by jury guaranteed by article I, section 22(a) of the Missouri Constitution.[2] The judgment is affirmed.

Appellants did not object at trial to the admission of Dr. Riordan's videotaped deposition testimony and, therefore, did not preserve this issue for appellate review. Appellants have not demonstrated that the jury's verdict was excessive due to passion and prejudice or that the verdict was excessive because it exceeded fair and reasonable compensation for Respondent's injuries. Finally, this Court will not address Appellants' constitutional challenge to section 538.300 because the failure to demonstrate that the verdict was excessive means that Appellants did not make the required threshold showing that would raise the possibility of remittitur and thereby implicate the statutory prohibition in section 538.300.

**Facts**

On May 11, 2009, Dr. Partamian diagnosed Respondent with a prostate abscess. Dr. Partamian testified at trial a prostate abscess is "a collection of pus or purulent material" caused by an inflammatory response to a bacterial infection. The abscess is formed when the body encapsulates the infected tissue to contain the infection. A prostate abscess is a serious medical condition that requires antibiotics and, if necessary, draining the abscess by piercing it and allowing it to drain from the body through the urinary tract.

---

[1] All statutory citations are to RSMo Supp. 2005.
[2] This Court has jurisdiction because the appeal involves a challenge to the validity of a state statute. Mo. Const. art. V, sec. 3.

After diagnosing the abscess, Appellants placed Respondent on antibiotic treatment. On May 15, 2009, Dr. Riordan, a member of the Phoenix practice group, examined Respondent. Dr. Riordan testified that his opinion was that Respondent's prostate abscess should be drained. Appellants did not drain the abscess and, instead, continued antibiotic treatments.

On May 17, 2009, Respondent's prostate abscess ruptured and, according to Dr. Partamian, was "spilling out into adjacent tissues." Dr. Partamian performed surgery. The surgery required an incision between Respondent's scrotum and anus to permit drainage. It also required the insertion of multiple drainage tubes to facilitate drainage.

As a result of the abscess rupture, Respondent sustained significant injuries. The infection spread into his penis, scrotum, pelvis and perineum. For 28 days, Respondent was in a coma and could breathe only with the assistance of a mechanical ventilator. The infection destroyed his urethra, causing Respondent to urinate from his perineum. Respondent's urethra had to be reconstructed with tissue from his mouth. The infection destroyed the musculature surrounding Respondent's urethra, causing urinary incontinence. Respondent's injuries also resulted in impaired reproductive function and persistent, permanent pain. Respondent sustained the foregoing injuries when he was 36 years old and, soon after, he was engaged to be married.

In June 2012, Respondent filed the underlying lawsuit alleging that Appellants negligently failed to timely drain the prostate abscess, causing the abscess to rupture. Respondent alleged that Appellants' negligence caused the injuries described above. The case proceeded to trial, and the jury returned a unanimous verdict in Respondent's favor.

3

The jury awarded Respondent $401,726.77 for past economic damages, $1.5 million for past non-economic damages and $2,398,273.23 for future non-economic damages for a total verdict of $4.3 million. This appeal followed.

## I. Appellants waived any objection to Dr. Riordan's deposition testimony

Appellants argue that the trial court abused its discretion by allowing Respondent to present evidence regarding two general aspects of Dr. Riordan's videotaped deposition testimony. First, Appellants argue that the trial court erred in admitting Dr. Riordan's testimony regarding his treatment of previous patients with prostate abscesses. Appellants assert that this testimony erroneously allowed Respondent to use evidence of Dr. Riordan's subjective medical opinion to to establish the objective, generally applicable standard of care. Appellants also assert that evidence of Dr. Riordan's treatment of previous patients was inadmissible because there was no evidence that the treatment needs of Respondent were sufficiently similar to those of Dr. Riordan's previous patients.

Second, Appellants assert that the trial court erred in admitting Dr. Riordan's testimony regarding his contract dispute with Phoenix. Appellants assert that this is a collateral issue introduced by Respondent to imply that Phoenix "was more concerned with money than quality or [Respondent's] care."

"To properly preserve an issue for an appeal, a timely objection must be made during trial." *State v. McFadden*, 369 S.W.3d 727, 740 (Mo. banc 2012). "General allegations of error not based upon specific objection or requests made during trial are insufficient to preserve the allegations for review; nor may deficiencies in the motion be

4

supplied from the movant's brief on appeal." *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 640 (Mo. banc 2013) (quoting *Williams By & Through Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987)).

Appellants cite their pretrial motion *in limine* as evidence of an objection. "A motion in limine, by itself, preserves nothing for appellate review." *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003).

Appellants assert that they lodged timely objections at trial to the admission of Dr. Riordan's deposition testimony. Appellants cite two portions of the trial transcript documenting two instances in which Dr. Riordan's deposition testimony was shown to the jury. In one instance, Appellants' trial counsel acknowledged that Dr. Riordan's testimony would be shown to the jury and informed the court that he had "no problem with that at all." In the other instance, the record reflects the video was shown to the jury and counsel made no objection. Appellants did not object at trial when Dr. Riordan's deposition testimony was offered and admitted into evidence.

Finally, Appellants cite their written objections to portions of Dr. Riordan's deposition testimony. The certificate of service on the objections states that they were served on Respondent's counsel prior to trial, on or about November 23, 2013. Dr. Riordan's testimony was admitted at trial in December 2013. The objections were file-stamped as received by the circuit court on January 3, 2014 after the trial had ended. Appellants assert that it is "likely" that the objections were filed in open court and that the objections simply were not entered into the trial record until after trial. This Court will not find reversible error based on speculation as to what "likely" may have happened

at trial. Further, the record reflects that Appellants' trial counsel specifically stated that Appellants had "no problem" with the admission of Dr. Riordan's testimony.

Appellants did not timely object at trial to the admission of Dr. Riordan's videotaped testimony. Therefore, Appellants' waived their argument that the trial court erred in admitting this evidence at trial.

## II. The verdict was not excessive

Appellants argue that the trial court erred by refusing to grant a new trial because the verdict was excessive. Appellants assert that the jury's verdict of $4.3 million was excessive because it was a result of passion and prejudice, exceeded the amount requested by Respondent in closing argument, and exceeded fair and reasonable compensation for Respondent's injuries.

The standard of review for a trial court's order denying a motion for a new trial is abuse of discretion. *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 134 (Mo. banc 2013). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration. *Id.* In considering whether the trial court abused its discretion, appellate courts view the facts in the light most favorable to the trial court's order. *Id.*

There are two general types of excessive verdicts: (1) a verdict that is disproportionate to the evidence of injury and results from an "honest mistake" by the jury in assessing damages; and (2) a verdict that is excessive due to trial error that causes bias and prejudice by the jury. *Lindquist v. Scott Radiological Grp., Inc.*, 168 S.W.3d

6

635, 645 (Mo. App. 2005). When a verdict is excessive because of an "honest mistake" in the jury's assessment of damages, the excessive verdict can be remedied by ordering remittitur or granting a new trial. *Id*. When an excessive verdict is caused by trial error causing bias and prejudice in the jury, a new trial is required. *Id*. The amount of the verdict does not by itself establish bias or passion and prejudice without showing some other error was committed during the trial. *Giddens v. Kansas City Southern Ry. Co*., 29 S.W.3d 813, 822 (Mo. banc 2000) (citing *Means v. Sears, Roebuck & Co*., 550 S.W.2d 780, 788 (Mo. banc 1977)). If there was trial error or misconduct by the prevailing party, the party alleging an excessive verdict must show that the verdict "is so grossly excessive as to shock the conscience because it is glaringly unwarranted." *Giddens,* 29 S.W.3d at 822.

**1. The verdict did not exceed fair and reasonable compensation**

A jury's award of damages should "fairly and reasonably" compensate the plaintiff for his or her injury. *Lindquist,* 168 S.W.3d at 647 (quoting *Callahan v. Cardinal Glennon Hosp*., 863 S.W.2d 852, 872 (Mo. banc 1993)). The factors that a jury should consider in determining damages include "the nature and extent of injury, diminished earning capacity, economic condition, plaintiff's age, and awards in comparable cases." *Id*. A jury is also allowed to consider intangible or non-economic damages relating to "past and future pain, suffering, effect on life-style, embarrassment, humiliation, and economic loss." *Id.*

Appellate review of a jury's verdict begins with the recognition that the jury retains "virtually unfettered" discretion in reaching its decision because there is a "large

range between the damage extremes of inadequacy and excessiveness." *Id*. at 647-648. An appellate court views the evidence in the light most favorable to the verdict and disregards evidence to the contrary. *Id.* at 648.

In this case, the jury's verdict included an award of $1.5 million in past non-economic damages and nearly $2.4 million in future non-economic damages. The evidence supports this award. Respondent, at age 36, sustained injuries including the destruction and reconstruction of his urethra, permanent sexual and urological dysfunction, persistent pain in his groin, and multiple painful medical procedures aimed at ameliorating the effects of his injuries. The evidence further showed that Respondent's injuries have interfered with his physical relationship with his wife. There was evidence that Respondent's injuries have negatively impacted his personality and self-esteem. Given Respondent's relatively young age, the extent of his injuries, the persistent pain, and the negative effects on multiple aspects of his life, this Court finds no basis for interfering with the jury's virtually unfettered discretion to determine damages or the trial court's decision to enter judgment according to the jury's verdict. This portion of the verdict was not excessive or disproportionate to the evidence of Respondent's injuries.

The verdict also awarded $401,726.77 in past economic damages. Respondent's hospital bills and lost wages support this award. Appellants assert that Respondent would have incurred a substantial portion of these economic damages even in the absence of any medical negligence because the prostate abscess by itself required substantial hospitalization. Respondent's expert, Dr. Malcolm Schwartz, testified that Respondent's prostate abscess should have been drained on May 13, 2009, and that the failure to drain

8

the abscess caused multiple medical complications requiring Respondent to endure substantial additional medical care. This portion of the verdict was not excessive or disproportionate to the evidence of Respondent's injuries.

**2. The verdict was not excessive as a result of passion and prejudice**

Appellants also assert that the overall verdict of $4.3 million is excessive because trial errors resulted in jury bias and prejudice. Appellants assert that the jury was biased due to the erroneous admission of Dr. Riordan's testimony. As established, Appellants waived their arguments regarding the admission of Dr. Riordan's testimony. Consequently, Appellants cannot establish that admission of the testimony was error, which, in turn, means that it "cannot serve as a predicate for a finding of excessiveness of the verdict." *See Giddens*, 29 S.W.3d at 822.

Finally, Appellants argue that the total damage award is excessive because it exceeds the amount requested by the Respondent's counsel during closing argument. During closing argument, Respondent's counsel suggested that a total verdict of $3,377,366.27 would adequately compensate Respondent for his injuries. The jury's verdict was for $4.3 million.

Appellants cite *Lewis v. Envirotech Corp.*, 674 S.W.2d 105 (Mo. App. 1984), for the proposition that a verdict exceeding the amount suggested by the plaintiff in closing argument is sufficient evidence of excessiveness. In *Lewis,* the plaintiff's closing argument suggested a compensatory damage award of $425,000. The jury awarded $850,000. *Id*. at 113. The trial court ordered a new trial unless the plaintiff agreed to accept a remitted award of $715,000. *Id.* The plaintiff elected a new trial. The court of

appeals affirmed the judgment ordering a new trial by stating the abuse of discretion standard of review and reasoning that "[w]e do not find such an abuse of discretion in the present case." *Id.* *Lewis* does not support the assertion that a verdict is excessive simply because it exceeds a plaintiff's suggestion of an appropriate damage award during closing argument.

Contrary to Appellants' argument, Missouri case law recognizes that the suggestion of a damages award during closing argument is not evidence and is not binding on the jury. *See Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 521 (Mo. App. 2013) (recognizing "the legion of cases where a plaintiff suggests a damage award in a personal injury case during closing only to receive a higher award from the jury"). This is particularly true in cases such as this, in which "the damages sought inherently involve an element of subjective calculation, as is the case with pain and suffering." *Id.* The jury's decision to award a greater amount of damages than suggested by Respondent's closing argument does not establish that the verdict was excessive. Appellants have not established that the verdict was excessive due to jury bias and prejudice. Appellants are not entitled to a new trial.

**III. Appellants cannot challenge the constitutionality of section 538.300**

Appellants argue that section 538.300 violates their right to a jury trial by prohibiting remittitur in medical negligence cases. Appellants assert that remittitur was one of the substantial incidents of the common law right to a jury trial and, therefore, is an "integral part" of the state constitutional right to a jury trial. Appellants conclude that

10

section 538.300 is unconstitutional and that, "at a minimum," their right to a jury trial includes the right to "have their request for remittitur considered by the trial court."

Remittitur is not a basis for determining whether a verdict is excessive and is, instead, one procedural option that a trial court may employ to remedy an excessive verdict. In *Sanders v. Illinois Central R. Co.*, 270 S.W.2d 731, 737 (Mo. banc 1954) (overruled in part on other grounds by *O'Leary v. Illinois Terminal R. Co.*, 299 S.W.2d 873, 879 (Mo. banc 1957), this Court summarized the common law remittitur procedure as follows:

> This court has long adhered to the generally prevailing rule that in a case such as this, if there is no error in the record except that the judgment is for a greater amount of damages than the evidence will support, the appellate court, instead of unconditionally requiring a new trial, will determine the amount of the excess and then give the plaintiff the option of remitting the excess and having an affirmance of the judgment for the remainder.

While judicial acceptance of the common law remittitur procedure ebbed and flowed over time, remittitur is part of Missouri's common law heritage. *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 638 (Mo. banc 2012); *see also McAllister v. Mullanphy*, 3 Mo. 38, 39 (Mo. 1831) ("It is not denied that the plaintiff in ejectment may enter a *remittitur,* where the finding is for too much much [sic], to avoid a new trial"). As these cases indicate, the availability of common law remittitur was based on a finding that the moving party was entitled to a new trial based on a determination that the jury's verdict was excessive or against the weight of the evidence. In other words, common law remittitur was not a basis for determining whether a verdict is excessive and was, instead, one procedural option that a trial court could employ to remedy an excessive verdict.

11

In 1985, this Court abolished the common law doctrine of remittitur, citing conflicting philosophies, confusion, and inconsistent applications. *Firestone v. Crown Ctr. Redevelopment Corp*., 693 S.W.2d 99, 110 (Mo. banc 1985). In 1987, the legislature superseded *Firestone* and enacted section 537.068, which provides for both remittitur and additur. Section 537.068 allows a court to reduce the damages awarded to the plaintiff if, "after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." Rule 78.10(b) of the Missouri Rules of Civil Procedure further refines the statutory remittitur procedure by providing that, "[i]f the court sustains the motion [for remittitur] in whole or in part, the court's order shall afford each party opposing such relief the option to file an election of a new trial."

Like the common law remittitur procedure, the purpose of the statutory remittitur procedure "is not to correct juror bias and prejudice, but to correct a jury's honest mistake in fixing damages." *Massman Const. Co. v. Missouri Highway & Transp. Comm'n*, 914 S.W.2d 801, 803 (Mo. banc 1996) (quoting *Skadal v. Brown*, 351 S.W.2d 684, 689 (Mo. 1961). "The trial court's grant of remittitur constitutes a ruling on the weight of the evidence." *Emery v. Wal-Mart Stores, Inc*., 976 S.W.2d 439, 448 (Mo. banc 1998); *see also Firestone*, 693 S.W.2d at 108 (citing *Morris v. Israel Bros., Inc*., 510 S.W.2d 437, 447 (Mo. 1974) (order of remittitur is a ruling on the weight of the evidence)); Rule 78.01(e) (courts may not "award additur or remittitur more than once on the ground that the damages are against the weight of the evidence")). Therefore, a prerequisite to

12

employing the remittitur procedure is that the moving party must demonstrate that "good cause warrants a new trial on damages or the verdict is against the weight of the evidence." *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 35 (Mo. banc 2013).[3] Stated another way, "[t]he circuit court should not sustain a motion for additur or remittitur under section 537.068 without having determined that the verdict is against the weight of the evidence and that the party moving for additur or remittitur is entitled to a new trial." *Id*. at 38. This Court would normally review the circuit court's decision to overrule or sustain a motion for additur or remittitur by viewing the evidence in "the light most favorable to the circuit court's order." *Id*. at 38-39 (quotation marks in original omitted).

As Appellants note, section 538.300 prohibits courts from ordering remittitur in medical negligence cases.[4] A necessary premise of Appellants' challenge to the constitutionality of section 538.300 is that Appellants would have had the benefit of remittitur but for the application of section 538.300. The fatal flaw in this premise is, as established above, that Appellants did not demonstrate that the evidence, viewed in the light most favorable to the circuit court's order overruling the motion for remittitur, was against the weight of the evidence or so excessive as to warrant remittitur or a new trial.

---

[3] *Badahman* dealt with additur. Additur, however, is simply the converse of remittitur. Therefore, remittitur, like additur, is available only if the trial court finds good cause warranting a new trial on damages or that the verdict is against the weight of the evidence.

[4] Section 538.300 provides: "The provisions of section 260.552, sections 537.068 and 537.117, and 537.760 to 537.765, and subsections 2 and 3 of section 408.040 shall not apply to actions under sections 538.205 to 538.230." Section 537.068 outlines the remittitur procedure. Respondent's medical negligence action is governed by section 538.205 to 538.230.

The failure to establish that the evidence, viewed favorably, was in any way excessive means that Appellants failed to make the required threshold showing necessary that would justify use of the remittitur procedure. The fact that remittitur is prohibited by section 538.300 in this particular action does not change the analysis.

Appellants failed to establish that the jury's verdict was in any way excessive and, therefore, failed to establish the necessary prerequisite that would allow the court the option of employing the remittitur procedure. Appellants sustained no legal injury from the statutory ban on remittitur in medical malpractice cases. This Court will not declare a statute unconstitutional when the party challenging the validity of the statute "is not harmfully affected by the particular feature of the statute alleged to be unconstitutional." *State v. Brown*, 502 S.W.2d 295, 305-306 (Mo. 1973) (quoting *State v. Mucie*, 448 S.W.2d 879 (Mo. 1970)); *see also Lester v. Sayles*, 850 S.W.2d 858, 872-873 (Mo. banc 1993) (this Court will not find a statute unconstitutional based on hypothetical instances in which the statute may be applied). Consequently, this Court will not address the substance of Appellant's constitutional challenge to the validity of section 538.300.

The judgment is affirmed.

_____
Richard B. Teitelman, Judge

All concur.

14