Tallman v. Nelson.

---

WALTER L. TALLMAN, Respondent, v. WILLIAM R. NELSON, Appellant.

Kansas City Court of Appeals, February 21, 1910.

1. **MASTER AND SERVANT: Negligence.** It is the duty of the master to use every reasonable effort that a prudent man would use in the same circumstances, to furnish his servant with reasonably safe appliances with which to work.

2. **INSPECTION: Simple Appliance.** If the appliance furnished by the master is not complicated or dangerous and it is purchased from a reputable and standard maker, it is a sufficient inspection if the master looks it over and does not discover any defects. In such case he need not separate its parts to look for hidden defects.

3. ———: ———: **Extraordinary Use.** But if the appliance, though simple, is intended for extraordinary and hazardous use, the sufficiency of inspection becomes a question for the jury.

4. ———: ———: **Wagon.** Where a newspaper publisher furnishes a wagon to a driver with which to convey newspapers to trains to be taken by the latter to distant places for circulation, and the driver has such short time to get to the trains and unload the papers that he must drive at rapid speed around corners of streets and over street railway tracks, and in doing so the spindle of an axle breaks and the driver is thrown to the street and injured. *Held,* that it is a question for the jury in such circumstances whether the axles of a wagon for such use should not have been inspected for defects not easily discernible.

5. ———: ———: **Negligence: Evidence.** On the question of the master's use of care in the purchase of a wagon for hazardous use, it is error to exclude evidence tending to show that he purchased of a reputable and standard manufacturer.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED AND REMANDED.

*Warner, Dean, McLeod & Timmonds* for appellant.

(1) The doctrine of *res ipsa loquitur* does not apply in this case. Breen v. Cooperage Co., 50 Mo. App. 202; Kremer v. Mfg. Co., 120 Mo. App. 247, 252; Deckard v. Railroad, 111 Mo. App. 117; O'Donnell v. Baum, 38 Mo. App. 245. (2) An employer is not liable for an injury caused by a "latent" defect; that is to say, one which is not discoverable by a reasonable inspection. Current v. Railroad, 86 Mo. 62; Electric Co. v. Kelly, 29 Atl. 427; Throckmorton v. Railroad, 39 S. W. 174; Lee v. St. L., etc. Co., 112 Mo. App. 397. (3) Nor do the courts, in determining whether an employer should have ascertained the existence of a defect, hold him responsible for the lack of technical knowledge which is ordinarily possessed only by persons in certain lines of business. Labatt's Master and Servant, sec. 153; O'Donnell v. Baum, 38 Mo. App. 245. (4) In the matter of inspection, the master is not required to apply extraordinary tests, not approved,

practicable or customary. Railroad v. Allen, 78 Ala. 494; 1 Labatt, Master &. S., sec. 126. (5) The mere fact that an accident happened because of a defective appliance cannot be taken as evidence of defendant's negligence. Railroad v. Kellogg, 55 Neb. 748. (6) No presumption of negligence on the part of the master arises or is shown from the mere fact of the accident. Blanton v. Dold, 109 Mo. 64; Bohn v. Railroad, 106 Mo. 429; Pierce v. Kile, 80 Fed. 865; Hoosier Stone Co. v. McCain, 133 Ind. 231; Reynolds v. Woolen Co., 168 Mass. 501; Redmond v. Lumber Co., 96 Mich. 545. (7) Plaintiff's right of recovery depends upon proof that his employer knew of the defect or flaw in the spindle, or that, by the exercise of ordinary care, it could have been ascertained. Elliott v. Railroad, 67 Mo. 272. (8) The court committed error in refusing defendant's instruction as to its non-liability for a mere accident. Groom v. Kavanagh, 97 Mo. App. 370; Henry v. Railroad, 113 Mo. 525; Guffey v. Railroad, 53 Mo. App. 462. (9) The master need exercise only ordinary care to discover defects. Bennett v. Lumber Co., 116 Mo. App. 699; Hester v. Packing Co., 84 Mo. App. 454; Elliott v. Railroad, 67 Mo. 274; Covey v. Railroad, 86 Mo. 641; Pavey v. Railroad, 85 Mo. App. 221; Current v. Railroad, 86 Mo. 62; Breen v. Cooperage Co., 50 Mo. App. 202; Howard v. Railroad, 173 Mo. 531; Brewing Co. v. Talbot, 141 Mo. 674; Curtis v. McNair, 173 Mo. 270; Trigg v. Sand Co., 187 Mo. 227. (10) The court should have permitted defendant to show that the wagon was purchased from a reliable maker. Little v. Head, 69 N. H. 494; 1 Labatt, Master & S., sec. 44, 153. (11) The testimony of a witness at war with the physical facts cannot sustain a verdict. Wray v. Electric Light Co., 68 Mo. App. 380, 389; Champagne v. Hamey, 189 Mo. 709, 726; Weltmer v. Bishop, 171 Mo. 110, 116; State v. Huff, 161 Mo. 487; State v. Francis, 199 Mo. 671.

*Oldham & James* for respondent.

(1) The master is liable for injuries to servant resulting from a latent defect, if the master knew, or by the exercise of ordinary care would have known, of the defect. McDermott v. Railroad, 30 Mo. 116; Gibson v. Railroad, 46 Mo. 166; Devitt v. Railroad, 50 Mo. 305; Dale v. Railroad, 63 Mo. 453; Elliott v. Railroad, 67 Mo. 272; Howard v. Railroad, 173 Mo. 524. (2) It is the master's duty to use ordinary care to inspect and keep appliances and tools in a reasonably safe condition for the use of his servants, and it is a continuing duty. Lee v. Railroad, 112 Mo. App. 372; Deckard v. Railroad, 111 Mo. App. 117; Bowen v. Railroad, 95 Mo. 268; Rodney v. Railroad, 127 Mo. 676; O'Neal v. Young, 58 Mo. App. 631; Coontz v. Railroad, 121 Mo. 652. (3) Ordinary prudence in the matter of inspection requires the master to adopt such reasonable methods and to apply such reasonable tests as are likely to discover the defects in the appliances, if they exist. The master is not necessarily excused from further inspection if he could not see the defects. Guthridge v. Railroad, 105 Mo. 520; Huth v. Dohle, 76 Mo. App. 671. (4) It is not the duty of a servant to search for latent defects in the machinery and appliances furnished him, for he has the right to assume that the master has discharged his duty of inspecting such appliances, and that the appliances are safe and sufficient for the purposes for which they are furnished. Lee v. Railroad, 112 Mo. App. 372; Connolly v. Printing Co., 166 Mo. 463; Hollenbeck v. Railroad, 141 Mo. 97; Herdler v. Stove and Range Co., 136 Mo. 17; Sullivan v. Railroad, 107 Mo. 78; Covney v. Railroad, 86 Mo. 641; Aldridge v. Blast Company, 78 Mo. 564; Porter v. Railroad, 71 Mo. 78; Chenoweth v. Sutherland, 101 S. W. 1105. (5) Defendant's instruction on "accident" was properly refused because it was misleading in that it excluded from the consideration of the jury the evidence

as to defendant's negligence by instructing them without qualification to find for defendant, if plaintiff's injuries were the result of a mere accident.   Zeis v. Brewing Co., 205 Mo. 638; Feary v. Railroad, 162 Mo. 108; Campbell v. City, 105 Mo. App. 56; Henry v. Railroad, 113 Mo. 534.   (6) The real cause of plaintiff's injury, to-wit: the flaw in the spindle, not being involved in any doubt, an "accident" instruction was not justified by the evidence.   Beauvais v. St. Louis, 169 Mo. 506.

ELLISON, J.—Plaintiff was engaged in defendant's service as a driver of one of his wagons in Kansas City.   He alleges that the wagon had a defective axle, in that the spindle was cracked, by reason of which it broke down, throwing him to the street and injuring him.   He recovered judgment in the trial court.

Defendant is the owner and publisher of the Kansas City Star, an evening newspaper published in Kansas City.   As such publisher he maintains a number of wagons and drivers to transport the papers to railway trains to be carried to distant places where the paper circulates.   On the day plaintiff was hurt it became his duty to drive a load of papers from the defendant's publishing office at the corner of Eleventh Street and Grand Avenue, over the streets of the city, to the Union Station, a distance of about a mile.   The papers were to be put upon three trains leaving the city one at 4:25 p. m., and two at 4:30 p. m., and when he received them into the wagon of which he was the driver he had sixteen minutes in which to get to the station and unload the papers, before the departure of the trains.   On the way it was necessary that he turn several corners of streets and cross several street car tracks.   This somewhat impeded his trip, or run, as it was called by some of the witnesses, and made it necessary in order to reach the station in time, for him to go much faster than ordinary street travel at places where

there was no hindrance of the nature just stated. After he had gotten perhaps half way to the station and was going at rapid speed, the spindle of the axle of one of the rear wheels broke off and the wagon dropped, throwing plaintiff to the street and inflicting the injury of which he complains.

At the close of the trial a peremptory instruction was asked directing a verdict for defendant and it was refused. The question, therefore, is, did plaintiff make out a case sufficient to justify submission to the jury? It is a fundamental rule governing controversies between master and servant in personal injury cases, that the former must make such reasonable endeavor as an ordinarily prudent and careful man would make, to furnish the latter with reasonably safe appliances and a reasonably safe place to work. The rule is simple and cannot be misunderstood, but whether the duty thus required of the master is performed in a given case is sometimes extremely difficult to determine. In order to discharge the duty it is sometimes necessary to inspect the place where the work is required to be performed and also the appliance with which it is to be performed. In this instance the plaintiff claims it was defendant's duty to inspect the appliance—the wagon— and that if he had done so, the axle would have been found to be defective and the wagon would not have been used until repaired, and thus he would have escaped injury. Now whether defendant should have inspected the axle, and what should have been the character of the inspection, whether he was remiss in his duty in these respects and thereby negligent, is where the difficulty of a proper disposition of the case arises.

It seems to us that for ordinary use of so simple and common an appliance as a wagon, to be drawn by horses, the master has discharged his duty to the servant who is to drive it and transfer articles or products from one place to another with it, if he purchases a wagon suitable for such purpose from a reputable

maker supplying wagons to the trade. [1 Labatt on Master and Servant, sec. 153.] It does not seem reasonable to demand in that character of appliance that the master, who on purchasing a wagon, looks it over to see if it is, to all appearances, in good order, shall take it apart and examine bolts, tires, wheels, axles, etc., to see if they have been properly made, or if there be a chance defect. If the master has seen to it that his wagon for ordinary use has been purchased of a reputable and standard maker, and has, upon receiving it, looked and seen that it is in apparently good condition for the service required, he has inspected it; for, what is a proper inspection depends upon the nature of the thing to be inspected and the use to which it is to be put. It is not understood that the great body of prudent people who own wagons, such, say, as the farmers and teamsters, who employ help, do more than furnish a wagon to an employee which is of first-class manufacture and which is apparently in good condition. And if that is the manner of conducting such business by the great body of prudent and careful persons who are in a like business, it is all that is required. If one does what the great body of other prudent men do, in a like situation, he is not negligent. A case much in point (Service v. Shoneman, 196 Pa. St. 63) involved the question of the negligence of a master in purchasing a steam boiler. As to the principle involved see Brands v. St. Louis Car Co., 213 Mo. 698, 709, and cases cited; Chrismer v. Bell Telephone Co., 194 Mo. 189; 1 Labatt on Master and Servant, sec. 44.

But while convinced that the foregoing is a sound view of proper inspection in the conditions and circumstances stated, it should not apply to other situations; thus, if a vehicle is to be put to an extraordinary hazardous use, ordinary prudence might suggest that a more particular inspection should be made than the mere purchase from a reputable maker, and a looking over. It is common knowledge that vehicles are used

in tests of the time to cover certain distances, and that they are drawn by horses going at very high speed, on curved or somewhat circular tracks. It is no more than reasonable that greater care should be used with such vehicles than in the other instances suggested. Again the test is, what would the ordinarily prudent man do in such instances? These observations are made that our views as to this case may be understood and their reasonableness recognized.

In this case, if we assume the defendant furnished a wagon of reputable and standard make, still the use made of it was sometimes of such extraordinary character that it might perhaps be termed hazardous. It was so in the instance in controversy. Plaintiff had on the wagon a load of papers which must be taken over the streets and unloaded at the depot at three trains, in time to be loaded onto those trains before their departure, and he was required to do this within sixteen minutes. Considering the streets, the corners to turn, the street railway tracks to cross and the speed required, we think the wagon was put to such extraordinary use as made it a question for the jury whether there had been a reasonable inspection made of its capacity for such service; that is to say, whether the defendant had used ordinary care in furnishing a reasonably safe wagon.

If we assume the wagon was purchased of a reputable maker, yet notwithstanding this, there was in fact a defect in the axle which broke. There was a crack in the spindle, not easily seen when the wheel was off in oiling it, yet which could have been detected by tests which were stated in evidence. Whether the exercise of ordinary care required that these tests should have been made, was a question for the jury.

In addition to this there was evidence tending to show that this wagon had been in hard use for quite a length of time, exactly how long its not stated, and, as testified by defendant's foreman of drivers, had been re-

paired a number of times. It furthermore appeared in the foreman's testimony that defendant had had broken axles on other like wagons at other times. But whether he meant to say that axles had broken while in use, or that he had discovered them while inspecting, is not clear.

There was evidence in the case tending to prove that it was plaintiff's duty as the driver, imposed on him by the defendant, to inspect the wagon. That it was his duty to oil it and, at such times, to inspect the spindles. But an instruction was given at defendant's request directing the jury to find for defendant if it was plaintiff's duty to inspect. This was a proper instruction.

Defendant complains of the refusal of an instruction to the effect that if the injury to plaintiff was the result of a mere accident, he could not recover. It was properly refused. Such instructions are given when there is evidence tending to show that the injury has resulted from an unknown cause. But where the cause is shown and the question is whether defendant is chargeable with negligence in permitting such cause to exist or continue, it is not proper to give such instruction, since the conditions of an accident are not in the case. [Zeis v. Brewing Ass'n, 205 Mo. 638.]

We now come to an objection which we think requires a reversal of the judgment. Defendant offered testimony to prove that he purchased the wagon of a company of first-class standing and of good general repute as manufacturers. The offer was not allowed. As already stated, there was evidence tending to show that the defect in the axle could have been discovered by certain tests which could have been made, by wiping the oil from the spindle and then striking it on the end with a hammer, which, it was claimed would cause oil to exude from the defective place. The object of this was to show that defendant should have made such tests and that ordinary prudence and care required that he

should have made them. In determining those things it was proper that the jury should have had before them one element of defendant's case bearing on the question whether he should have employed tests to ascertain the soundness of the axle. We have seen that this would not have exculpated defendant as a matter of law, but it was an element which would enter into a consideration of the question of ordinary care and should have been admitted as a part of his side of the case. [Little v. Head, 69 N. H. 494.]

We do not agree with plaintiff that the error was rendered harmless by the witness being permitted to answer that he, the witness, thought "it was a first-class wagon that could be made." The object of the evidence rejected was to show what the *defendant* thought, as bearing on his case. The witness was the foreman of defendant's drivers and was undoubtedly competent to state what was the standing and reputation of the manufacturers.

The judgment is reversed and the cause remanded. All concur.