CLARENCE E. LUTGEN, APPELLANT, v. STANDARD OIL COMPANY, RESPONDENT.

Kansas City Court of Appeals. July 6, 1926.

774

*Atwood, Wickersham, Hill & Chillcott* and *Elon J. Levis* for appellant.

*R. R. Brewster, J. M. Fisher* and *Ilus M. Lee* for respondent.

JOHNSON, J.—This is an action for personal injuries alleged to have been caused by negligence of the defendant. At the close of the evidence offered by plaintiff the court gave a peremptory instruction in the nature of a demurrer to the evidence whereupon plaintiff took an involuntary nonsuit and following the overruling of his motion to set aside the nonsuit brought the case here by appeal.

The injury occurred December 6, 1921, while plaintiff was in the service of defendant at Sedalia, where he had been employed for some time to drive one of defendant's motor trucks and to make deliveries of gasoline and oil to defendant's customers.

For ten months he had been making these deliveries in a Ford truck of a type unequipped with a self-starting device. He was not a mechanic, had no expert knowledge respecting the mechanism of such vehicles and was not employed to inspect the car or keep it in repair.

Three days before the date of his injury the car had stopped, resisted his efforts to start it and at the direction of defendant's manager had been towed into a repair shop in Sedalia which did defendant's repair work on such trucks. This repair shop was not owned or operated by defendant, but was under independent control. The truck was returned to defendant as repaired and in safe condition for use, and defendant's manager ordered plaintiff to resume its use, stating in substance that it had been repaired and was in safe condition.

In obedience to this order, plaintiff, the next morning, undertook to "crank" the motor, but before attempting that operation set the spark lever in the proper position to prevent back-firing. But there was a back-fire and the crank handle kicked out of plaintiff's grasp and struck his right arm, causing a severe fracture.

In endeavoring to ascertain the cause of the back-firing plaintiff, so he states, went to the steering wheel, examined the spark lever, working it up and down with his left hand, and discovered from its looseness that it was unconnected with any mechanism.

It is contended by plaintiff that his evidence is sufficient to support a reasonable inference that the back-fire and its resulting injury was caused by the negligent disconnection of the timer rod from the timer case. There is no direct proof of such defect. The investigation of plaintiff stopped when he perceived that the spark lever moved with unusual looseness. He did not examine the mechanism and being unmechanical would have learned nothing if he had, since he was not familiar with the internal parts of the machine or their relations to each other.

He introduced an expert mechanic who testified that the disconnection of the timer rod would cause back-firing and that the loose play of the spark lever described by plaintiff indicated such disconnection and was a direct result thereof.

In answer to the direct question, "What cause or causes in your opinion could account for that back-fire," the expert said, "Well, a disconnected timer rod could cause it if it was disconnected would be practically the only thing I could see if the motor was properly timed up."

Speaking of the connection of the rod with the timer case he said, "Well it is put through a hole and the cotter key in it . . . to keep the timer rod from slipping out."

Without the cotter key in place he thought the running of the car or even the vibration of the engine would cause a disconnection of the rod.

One of the proprietors of the repair shop, introduced by plaintiff testified that his shop did the repair work for the defendant at Sedalia. When the truck was brought to the shop he concluded the trouble was "an oil line stop up," and in repairing the defect he took off the radiator, the chain pulley and the timing gear case cover, and then removed the obstruction by poking a flexible wire through the oil line. In doing these things he took out the cotter key and disconnected the rod. Asked if he remembered reconnecting the rod after the work was done, he said, "I would not take oath that I did, but I distinctly know that I never did leave no such job without checking up my work. And I am positive I put that back the way it should be and put the cotter key in it and fastened it. I am positive of it,"

"Q. What did you mean when you said at first that you would not take an oath that you did that? A. I just simply wouldn't swear to it. I might be mistaken, but I might not on the other hand."

Further he said that after the parts were replaced he cranked the car without mishap, drove it around town to ascertain if it was running properly and being satisfied that it was he returned it to the defendant as a completed job.

In considering the questions of law the evidence must be viewed in its light most favorable to the alleged cause of action. Necessarily the directed verdict proceeded from the thought of the learned trial Judge that the evidence of plaintiff with every reasonable inference that might be drawn therefrom in his favor still fell short of raising a debatable issue of fact. The duty rested upon plaintiff to bring proof of a state of facts which if accepted by the jury as true would point with certainty to the pleaded negligence as the proximate cause of his injury. It is not fatal to a plaintiff's right to recover that his evidence may present two ultimate inferences, one entitling him to recover and the other fatal to a recovery (Rhodes v. Mo. Pac., 234 S. W. 1026), but it must present the friendly inference as the only one compatible with its basic facts. If the state of facts upon which he must rely for a recovery itself would support either of two contradictory inferences respecting the ultimate fact, he fails in his proof since it leaves the subject of liability in the field of conjecture and speculation. But where, as sometimes is the case, his evidence merely includes contradictory proof relating to one or more of the constitutive facts of his cause, but does include substantial evidence supporting all of them, he sustains his burden which devolves upon him no greater task than to offer substantial evidence supporting all of the elemental facts which entitle him to recover. His case then must go to the jury, whose duty it becomes to settle all evidentiary conflicts wheresoever they may appear in the evidence and ascertain the true ultimate facts. The evidence of plaintiff satisfies this rule. He was not required to adduce direct proof of the constitutive facts of his cause of action, but might prove them by facts and circumstances from which the pleaded negligence should be inferred.

Plaintiff testified that immediately following his injury he moved the spark lever back and forth and found that it moved with a looseness indicative of a lack of attachment to the mechanism it was designed to operate. He was not qualified by his knowledge or experience to make any further investigation.

The expert witness testified that this condition of the spark lever pointed with certainty to the disconnection of the rod with the timer case and with such disconnection the engine was bound to back-fire when an attempt was made to crank it.

The mechanic who did the work testified that he did disconnect the rod from the timer case to enable him to remove the obstruction from the flow line and although he said with some uncertainty that he re-connected the rod and tested the car after the completion of the work, the jury were entitled to believe that he did not fully complete the work of re-connection. Obviously the mechanic did crank the car in order to drive it to the defendant's place of business and the rod then must have been connected with the timer case or the engine would have back-fired. But if the cotter key, the function of which was to hold the rod in its attachment to the timer case, had not been replaced, the motion of the car and the vibration of the engine would have been sufficient, so the expert testified, to have loosened the rod from its attachment. The jury were entitled to infer from all of these facts and circumstances that such failure to fasten the rod was the direct cause of the backfiring and therefore that the injury was the result of negligence of the mechanic in failing to replace the cotter key.

Such conclusion would not involve resort to speculation nor to the much reprobated process of building inference on inference, but would directly flow from the basic facts just mentioned.

This brings us to the question of the liability of defendant for results which followed the negligence of the mechanic who was not a servant of defendant, but was one of the proprietors of the shop where defendant sent the car to be repaired.

As the master of plaintiff, the primary duty of defendant was to exercise reasonable care to provide him with reasonable safe appliances with which to do his work. This duty was positive, continuous and non-delegable, and in its performance defendant was bound to make reasonable inspections of the car to discover defects which might increase the hazards of its use and when such defect appeared to repair it or have it repaired and thereby restore the car to a condition of reasonable safety. A master is not an insurer of the safety of the tools and appliances he provides for the use of the servant, but he must exercise care commensurate with the risks of the service and by that we mean such care as reasonable men would expect of an ordinarily careful and prudent employer in his situation.

Defendant might have maintained its own repair shop and employed its own skilled mechanics, in which case it would have been answerable to plaintiff for their lack of care. As is aptly said in Beck v. Lumber Co., 239 S. W. l. c. 168:

"The master may of course designate any person regardless of his position or his relation to other employees to perform that duty for him, but the person so designated while engaged in the performance of that duty stands in the shoes of the master and his action or want of action is chargeable to the master the same as if the master had un-

dertaken to perform the duty in person. [Williams v. Prior, 272 Mo. 613-620, 200 S. W. 53; Knorpp v. Wagner, 195 Mo. 637-662, 93 S. W. 961.]

Where the master undertakes to do the needed work himself by the hands of skilled workmen he employs for that purpose, he does not escape liability for the consequences of their negligence in the performance of such duty by showing that he exercised reasonable care in their selection. This is upon the principle that the duty of the master is positive and non-delegable and therefore cannot be shifted to other servants no matter how competent they may be.

And we think the same principle must be applied, where, as in this instance, the master does not maintain his own repair shop, but employs an independent concern to do his necessary repair work.

The reputable manufacturer rule cannot be extended to cover the performance by the master of his positive, continuous and non-delegable duty to exercise reasonable care to discover defects in the appliances he furnishes his servant for use and to maintain such appliances in a reasonably safe condition for such use.

When defendant purchased this truck from a reputable manufacturer and upon receiving it looked and saw that it was apparently in good condition for the services required, it then performed its full duty and was not required to take the machine apart to discover if there had been any chance defect in its construction. [Tallman v. Nelson, 141 Mo. App. 478.] But when the car was put in use the duty of defendant to exercise reasonable care to maintain it in a safe condition began and continued without interruption, and if that duty could not be delegated to servants employed by defendant, by the same token it could not be delegated to anyone else, which is but another way of saying that regardless of the means employed the ultimate responsibility was upon the defendant. The means he employed, whatsoever they were, were his means and the negligence in the performance of his task was his negligence.

The defense of assumed risk must be ruled against defendant, since it is elemental that risks caused by the negligence of the master never are assumed by the servant.

Nor does the evidence of plaintiff accuse him of contributory negligence as a matter of law. He was told by the defendant's manager that the car had been repaired and was ready for use and was directed to resume its use. He had a right to rely on this assurance and it did not devolve upon him to make an investigation to ascertain the chance existence of a dangerous defect.

It follows from what has been said that the learned trial Judge erred in directing a verdict for the defendant.

The judgment is reversed and the cause remanded. *Bland, J.*, concurs; *Arnold, J.*, dissents; *Trimble, P. J.*, absent.