

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

CANDACE LOVE, as personal
representative of the Estate of
CASEY REDMOND,

     Plaintiff/Respondent,

v.

OSAGE MARINE SERVICES, INC.,

     Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. ED111905

Appeal from the Circuit Court
of the City of St. Louis
Cause No. 2122-CC08981

Honorable Madeline O. Connolly

Filed: April 16, 2024

### Introduction

Osage Marine Services, Inc. ("Appellant") appeals the trial court's judgment in favor of Candace Love ("Love" or "Plaintiff") for the death of her son, Casey Redmond ("Redmond"). In its first two points on appeal, Appellant argues the trial court improperly submitted claims for damages for pain and suffering and loss of support to the jury. Third, Appellant argues the trial court erred in denying remittitur because the jury verdict was excessive. Fourth, Appellant argues the trial court erred in admitting evidence of liability and certain damages following Appellant's admission of liability. Fifth, Appellant argues the trial court erred in submitting a jury instruction that contained an incorrect statement of law. Finally, Appellant argues the trial court's entry of

judgment violated an injunction issued by a federal district court in a companion federal case. We affirm the judgment of the trial court.

## Factual and Procedural Background

Factual History

On December 14, 2019, Casey Redmond and D.M., his supervisor, were working as deck crew members on a tugboat, the M/V Rain Man.[1] Redmond, who was 22 years old, appeared to be feeling well and was not having any health or medical problems.

Around 1:30 a.m. on the morning of December 15, Redmond and D.M. got an assignment to help put a barge into a fleet. As the Rain Man pulled up to the barge, D.M. and Redmond both had their life vests on and buckled. When he stepped onto the barge, D.M. noticed cornmeal on the barge deck. According to D.M., the cornmeal was a slipping hazard and a workplace safety hazard and should have been removed as soon as possible. D.M. avoided the cornmeal and boarded the barge.

After D.M. stepped onto the deck, he heard the tools that Redmond was carrying bounce and hit the deck. Then D.M. heard the water splash as Redmond fell into the river. D.M. and a deckhand from another boat saw Redmond floating in the river towards the Rain Man. D.M. ran down the barge deck to keep a visual on Redmond. Redmond continued towards the front of the Rain Man and went underwater. He was never seen again. Numerous vessels spent hours searching for Redmond hoping to find him alive.

After unsuccessfully searching for Redmond's body, recovery crews found Redmond's life jacket. The back plate of the life jacket was cut in half. The boat or its propeller likely cut the life

---

[1] The personal identifying information of witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

jacket in half, and there was nothing else identified in the river that could have caused the cut. Appellant's vice president of operations conceded Redmond likely hit the propeller while wearing his life vest, which likely killed or maimed him. He also expressed, based on his experience, that Redmond could have survived for two and a half to three hours after falling into the river without injury. Redmond's body was never found.

At the time of his death, Redmond lived with his mother, Plaintiff Candace Love, in her home. When Redmond was not working, he used most of his free time to keep the house clean, cut the grass, shovel snow, and fix things that stopped working. He generally helped Love with anything she needed done around the house. Occasionally, Redmond would contribute $100 or so to help Love with bills.

In addition, Redmond provided crucial medical care for his mother, who has had Type I diabetes since she was a child. As Love has aged, the diabetes has taken a toll on her body, causing neuropathy and erratic blood sugar levels. When her blood levels get low, she gets shaky and confused and cannot take care of herself. Redmond would check Love's blood sugar levels and make her something to eat or drink to increase her blood sugar levels. This was important because if she did not get her blood sugar levels up she would go into a coma and possibly die. Love's diabetes also has caused a stomach condition called gastroparesis, making her prone to bouts of nausea and vomiting. Redmond took care of her while she was vomiting and cleaned up after her.

Love testified to these contributions by Redmond. Redmond's grandfather and coworkers also attested to the pecuniary contributions he made to his mother. Love expected these contributions to continue in the future. She now lives alone in the same home in which she lived with Redmond.

<u>Procedural History</u>

3

Love filed a two-count petition alleging Appellant's negligence under the Jones Act, 46 U.S.C. § 30104, and unseaworthiness of the Rain Man, resulting in Redmond's death. On each count, Love requested damages in excess of $51 million for Redmond's conscious pain and suffering prior to his death and Love's loss of Redmond's economic support and pecuniary services, among other damages.

Appellant initially denied any negligence and all liability. Approximately one week before trial, Appellant moved to file an amended answer no longer contesting liability for Redmond's death. The trial court granted Appellant's motion, and Appellant filed an amended answer admitting that Appellant failed to provide Redmond with a safe workplace, admitting liability for Redmond's death, and reserving the right to contest only damages at trial. As to each count, Appellant admitted "plaintiff has adduced evidence sufficient to support a finding of liability" and stated its intention to "not contest Plaintiff's right to an award for those elements of damages that are available and proven under the applicable law." The case proceeded to trial.

*Motions for Directed Verdict and Judgment Notwithstanding the Verdict*

At the close of Plaintiff's case-in-chief, Appellant moved for a directed verdict on Plaintiff's claim for loss of financial support, arguing Plaintiff failed to demonstrate she was financially dependent on Redmond. Additionally, Appellant moved for a directed verdict on Plaintiff's claim for conscious pain and suffering, arguing Plaintiff presented insufficient evidence that Redmond was conscious immediately prior to his death. The trial court denied both motions.

Following the jury's verdict on damages, Appellant filed a motion for judgment notwithstanding the verdict. Appellant renewed his previous arguments regarding damages for loss of financial support and conscious pain and suffering. The trial court denied Appellant's motion for judgment notwithstanding the verdict.

*Jury Instruction 6*

Prior to closing arguments, the trial court held a jury instruction conference. Appellant submitted Instruction 6, stating, among other things, the only issue for the jury to decide was damages since Appellant admitted liability and that the jury must not consider damages for Plaintiff's grief or bereavement from Redmond's death. Appellant patterned this instruction on MAI 31.07(A), as modified by MAI 24.06. Plaintiff did not object to Instruction 6, and the instruction was submitted to the jury.

Appellant also proposed a second instruction modeled on a jury instruction of the U.S. Court of Appeals for the Seventh Circuit in Federal Employer's Liability Act ("FELA") cases involving death. Appellant stated it submitted this instruction because it believed the MAI instruction did not properly instruct the jury on the law, but did not object to Instruction 6, which it already had submitted. Plaintiff objected to the Seventh Circuit instruction. The trial court sustained the objection and did not give the proposed instruction.

Appellant proposed a third instruction, which tracked the modern federal jury instruction. Again, Plaintiff objected, and the trial court rejected the instruction.

Finally, Appellant proposed a fourth instruction, a non-MAI instruction which would provide the jury with guidance on what damages were available. Plaintiff objected. The trial court sustained the objection and did not give the fourth proposed instruction.

After closing arguments and deliberations, the jury returned a verdict assessing $15 million in total damages against Appellant. Appellant now appeals.

**Discussion**

Appellant raises six points on appeal. In its first point, Appellant argues the trial court erred in denying its motion for directed verdict on Plaintiff's claim for conscious pain and suffering

because Plaintiff failed to adduce sufficient evidence to submit those damages to the jury. In its second point, Appellant similarly argues the trial court erred in denying its motion for directed verdict on Plaintiff's claim for loss of financial support because Plaintiff failed to adduce sufficient evidence to submit those damages to the jury. In its third point, Appellant argues the trial court erred in denying its motion for remittitur because the jury's award exceeded the damages demonstrated by the evidence. In its fourth point, Appellant argues the trial court erred in allowing Plaintiff to adduce evidence of liability and certain damages. In its fifth point, Appellant argues the trial court erred in submitting Instruction 6 to the jury because the instruction contained an incorrect statement of law. In its sixth and final point, Appellant argues the trial court erred in entering judgment because a federal district court issued an injunction prohibiting the entry of judgment.

<u>Point I</u>

In its first point, Appellant argues the trial court erred in denying its motion for directed verdict on Plaintiff's claim for conscious pain and suffering because Plaintiff failed to adduce sufficient evidence to submit those damages to the jury.

*Standard of Review*

Our review of the trial court's denial of a motion for directed verdict requires us to determine whether the plaintiff made a submissible case, which is a question of law we review *de novo*. *Eisenmann v. Podhorn*, 528 S.W.3d 22, 29 (Mo. App. E.D. 2017). "In determining whether the plaintiff made a submissible case, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff, and all contrary evidence and inferences are disregarded." *Id.* at 29–30. "However, this Court will not supply missing evidence or make

unreasonable, speculative, or forced inferences from the evidence presented." *Harner v. Mercy Hosp.*, 679 S.W.3d 480, 484 (Mo. banc 2023).

"The plaintiff may prove essential facts by circumstantial evidence as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred." *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 635 S.W.3d 109, 132 (Mo. App. E.D. 2021) (quoting *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011)). We will reverse only if "there is a complete absence of probative fact to support the jury's conclusion." *Eisenmann*, 528 S.W.3d at 30 (quoting *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 26 (Mo. App. E.D. 2013) (en banc)).

*Analysis*

A plaintiff can recover damages for pre-death pain and suffering under the Jones Act.[2] *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *McBride v. Estis Well Service, LLC*, 853 F.3d 777, 781 (5th Cir. 2017); *see also Spiller v. Thomas M. Lowe, Jr., & Assocs., Inc.*, 466 F.2d 903, 909 (8th Cir. 1972). This includes damages for a seaman who drowns. *Deal v. A.P. Bell Fish Co.*, 728 F.2d 717, 718 (5th Cir. 1984).

"Although eyewitness evidence is not necessary, there must be evidence supporting a finding that the decedent was conscious when [he] drowned." *Id.* A plaintiff must show "by a preponderance of the evidence, that the decedent was conscious after realizing his danger." *McBride*, 853 F.3d at 781 (quoting *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1092 (5th Cir. 1988); *see also Deal*, 728 F.2d at 718 ("[T]here must be evidence to support a reasonable inference of

---

[2] The Jones Act is a federal statute allowing for the recovery of damages for the personal injuries of seamen. *See Duncan v. Am. Com. Barge Line, LLC,* 166 S.W.3d 78, 83 (Mo. App. E.D. 2004). The Jones Act incorporates FELA by reference, and thus federal caselaw interpreting FELA and the Jones Act are instructive to this Court. *Id.*

7

consciousness."); *McAleer v. Smith*, 791 F. Supp. 923, 929 (D. R.I. 1992) ("To recover for their decedents' conscious pain and suffering, plaintiffs must establish that the decedents did not die instantaneously but were momentarily conscious before drowning."). "A permissible inference may be made drawn from the circumstances as a whole that a person was not rendered unconscious by the experience." *Kline v. Maritrans CP, Inc.*, 791 F. Supp. 455, 464 (D. De. 1992). Allegations of pain and suffering are insufficient when the record supports a finding of almost instantaneous death. *F/V Carolyn Jean, Inc., v. Schmitt*, 73 F.3d 884, 885 (9th Cir. 1995).

This case presents a close question regarding whether the evidence presented a submissible claim for pain and suffering. The question is whether Plaintiff proved by a preponderance of the evidence, that is, whether it is more likely than not, from the circumstantial evidence and reasonable inferences drawn therefrom, that Redmond was conscious after he fell into the river and therefore endured conscious pain and suffering. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff and disregarding all contrary evidence and inferences, *Eisenmann*, 528 S.W.3d at 29-30, the evidence established that, more likely than not, Redmond was conscious after falling into the river. We therefore affirm the trial court's denial of Appellant's motion for directed verdict on the claim for conscious pain and suffering.

The evidence was that Redmond, a young man in good health, and D.M. approached the barge with their life vests on and buckled. D.M. first stepped from the Rain Man onto the deck of the barge. D.M. noticed a pile of cornmeal on the barge deck and stepped around it. Then D.M. heard Redmond's tools bounce on the barge deck and Redmond fall into the river. Critically, Appellant admitted its failure to provide Redmond with a safe workplace and conceded liability for his death, and there was no indication from the evidence that Redmond was rendered

8

unconscious or died instantaneously upon falling. After Redmond fell into the river, D.M. and another deckhand from a different boat saw Redmond floating in the river towards the Rain Man. Then Redmond went underwater and disappeared.

Love notes that Redmond was conscious and ambulatory while performing his work immediately before he fell into the river. Love points to a complete lack of evidence that Redmond was rendered unconscious or died instantaneously upon falling, or that he had any visible injury after he fell into the river. Instead, as Appellant's vice president of operations conceded, Redmond likely hit the Rain Man's propeller while wearing his life vest, which killed or maimed him. The vice president stated Redmond could have survived for two and a half to three hours after falling into the river without injury. From these facts, Love argues Redmond either was swept under the Rain Man and killed by its propeller or drowned after spending up to three hours in the river, and the jury reasonably could have found considerable conscious pain and suffering.

Appellant points out that Plaintiff, who bore the burden of proof, failed to adduce evidence tending to prove anything other than the equally reasonable inference that Redmond "simply collapsed" and fell into the river unconscious, which would defeat a claim for conscious pain and suffering. *See Lutgen v. Standard Oil Co.*, 287 S.W. 885, 887 (Mo. App. K.C. 1926) ("If the state of facts upon which [the plaintiff] must rely for a recovery itself would support either of two contradictory inferences respecting the ultimate fact, he fails in his proof, since it leaves the subject of liability in the field of conjecture and speculation."); *United Rentals N.A., Inc. v. Evans*, 668 S.W.3d 627, 641-42 (Tex. 2023) ("A jury may not infer conscious pain and suffering from circumstantial evidence when the evidence gives rise to any number of inferences, none more probable than the other.") (internal citations and alterations omitted). Appellant may have a point

but for its pre-trial admission that its negligence and failure to provide a safe workplace, as opposed to a sudden collapse, caused Redmond's death.

We hold only that, considering Appellant's admission of liability and our standard of review requiring us to view the evidence and all reasonable inferences in the light most favorable to the jury's verdict and to disregard all evidence to the contrary, *see Eisenmann*, 528 S.W.3d at 29–30, Redmond more likely than not was conscious when he fell into the river and therefore endured pain and suffering from either a grisly death by the propeller of the Rain Man or extended exposure and drowning. Either way, we cannot conclude "there is a complete absence of probative fact to support the jury's conclusion." *Id.* at 30.

Accordingly, the trial court did not err in denying Appellant's motion for directed verdict and submitting Plaintiff's claim for conscious pain and suffering to the jury for consideration.

Point I is denied.

## Point II

In its second point, Appellant argues the trial court erred in denying its motion for directed verdict on Plaintiff's claim for loss of financial support because Plaintiff failed to adduce sufficient evidence to submit those damages to the jury.

*Preservation*

Love argues Appellant failed to preserve this point for appellate review. Love reasons that Appellant's motion for directed verdict was solely focused on the issue of financial dependency, and not on the issue of submissibility of pecuniary damages.

To preserve a submissibility issue in a jury-tried case, a party must file a motion for directed verdict at the close of plaintiff's evidence and a motion for judgment notwithstanding the verdict following an adverse verdict. *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 476 (Mo. banc

10

2021). Both motions must contain specific challenges to the submissibility issue. *Id.* So long as the trial court is fully apprised of the specific basis for challenging submissibility in both motions, the issue will be preserved for appeal. *Id.* at 477.

In its motion for directed verdict at the close of Love's evidence, Appellant argued Plaintiff failed to make a submissible case for financial support in that under the existing law, financial dependency of the beneficiary is required to submit the case to the jury and there was no evidence of financial dependency. Following the jury's adverse verdict, Appellant renewed its motion for directed verdict on the claim for loss of financial support in its motion for judgment notwithstanding the verdict. Appellant again argued that damages for financial loss should not have been submitted to the jury because there was no evidence proving that Love was financially dependent on Redmond, and Appellant was entitled to judgment as a matter of law.

Appellant has maintained the same legal theory throughout its motion for directed verdict, its motion for judgment notwithstanding the verdict, and now on appeal. Appellant preserved this issue for appeal. *See Rhoden*, 621 S.W.3d at 477.

*Standard of Review*

As explained, our review of the trial court's denial of a motion for directed verdict requires us to determine whether the plaintiff made a submissible case, which is a question of law we review *de novo*. *Eisenmann* 528 S.W.3d at 29. We must "view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff, and all contrary evidence and inferences are disregarded." *Id.* at 29–30. We will reverse only if "there is a complete absence of probative fact to support the jury's conclusion." *Id.* at 30.

*Analysis*

11

The Jones Act allows for the recovery of pecuniary damages. *Miles*, 498 U.S. at 32; *see also Michigan Cent. R. Co. v. Vreeland*, 227 U.S. 59, 70 (1913). Pecuniary damages include loss of support. *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 584–85 (1974) *superseded by statute on other grounds,* Longshore and Harbor Workers' Compensation Act Amendments of 1972, Pub. L. No. 92–576, 86 Stat. 1263, *as recognized in Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990); *Furka v. Great Lakes Dredge & Dock Co., Inc.*, 755 F.2d 1085, 1090 n. 7 (4th Cir. 1985). Loss of support includes any financial contributions, as well as "services the decedent performed at home." *Gaudet*, 414 U.S. at 585; *see also Wahlstrom v. Kawasaki Heavy Indus., Ltd.,* 4 F.3d 1084, 1093 (2d Cir. 1993). Such services include "hauling out the garbage, mowing the lawn, making repairs, and other household tasks." *Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 633 (6th Cir. 1978); *Vreeland*, 227 U.S. at 71 (explaining "pecuniary damages" is "not so narrow as to exclude damages for the loss of services of the husband, wife, or child, . . . which can only be supplied by the service of another for compensation").

Appellant maintains that Love was required to show that she was financially dependent on Redmond. But financial dependency is not required for damages for loss of support. *Kline*, 791 F. Supp. at 469. According to the U.S. Supreme Court, what is required is "some reasonable expectation of pecuniary assistance or support of which [plaintiffs] have been deprived." *Vreeland*, 227 U.S. at 70.

There was sufficient evidence to support the trial court's submission of Love's claim for pecuniary loss of support to the jury. First, Redmond provided support to Love through at least nominal monetary contributions and by contributing to household expenses. In addition, Redmond spent most of his time away from work cleaning the house, cutting the grass, shoveling snow, and fixing things that stopped working. He also provided crucial medical care for his mother when she

12

could not take care of herself. Redmond checked her blood sugar levels and made sure she ate to avoid slipping into a coma and possibly dying. During her bouts of nausea and vomiting, Redmond took care of her and cleaned up after her. Love expected these contributions to continue in the future.

These facts amount to a submissible case of Love's loss of Redmond's pecuniary support upon his death. *See Eisenmann*, 528 S.W.3d at 29–30. The trial court did not err in denying Appellant's motion for directed verdict.

Point II is denied.

Point III

In its third point, Appellant argues the trial court erred in denying its motion for remittitur because the verdict exceeded fair and reasonable compensation for Redmond's death and Love's resulting damages.

*Standard of Review*

We review a trial court's decision on remittitur for an abuse of discretion. *Delacroix*, 407 S.W.3d at 36. "A trial court has great discretion in approving a verdict or setting it aside as excessive." *Crowder v. Ingram Barge Co., LLC*, 681 S.W.3d 641, 649 (Mo. App. E.D. 2023). "Broad discretion is given to the jury in determining a party's injury." *Delacroix*, 407 S.W.3d at 36. "Our review is limited to evidence supporting the verdict, and we will exclude any contrary evidence." *Id.*; *see also Badahman v. Catering St. Louis*, 395 S.W.3d 29, 39 (Mo. banc 2013). An appellate court will interfere with the trial court's decision to deny a motion for remittitur "only if the verdict is so excessive as to shock the conscience and convince the court that both the jury and the trial court abused their discretion." *Crowder*, 681 S.W.3d at 649.

*Analysis*

"Section 537.068 permits a court to enter a remittitur order reducing the jury's verdict if the court finds that the jury's verdict exceeds the fair and reasonable compensation for plaintiff's injuries and damages." *Wilkins v. Bd. of Regents of Harris-Stowe State Univ.*, 519 S.W.3d 526, 542 (Mo. App. E.D. 2017). "The purpose of the remittitur procedure is to correct a jury's honest mistake in fixing damages, rather than to correct juror bias and prejudice." *Id.* (quoting *Stewart v. Partamian*, 465 S.W.3d 51, 59 (Mo. banc 2015)). "A prerequisite to remittitur is that the moving party demonstrates that good cause warrants a new trial on damages or the verdict is against the weight of the evidence." *Id.* (quoting *Badahman*, 395 S.W.3d at 35). "[T]o warrant remittitur or new trial due to excess, the size of the verdict must be so grossly excessive as to shock the conscience because it is glaringly unwarranted." *Id.* (quoting *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 54 (Mo. App. W.D. 2016)).

The trial court found that Appellant did not demonstrate good cause warranting a new trial on damages or that the verdict was against the great weight of the evidence. Additionally, the trial court found that the verdict was not so grossly excessive as to shock the conscience. The trial court did not abuse its discretion in denying Appellant's motion for remittitur.

We already have concluded that Plaintiff made a submissible case that Redmond endured conscious pain and suffering and that, as a result of Redmond's death, Plaintiff was damaged from the loss of her son's support. In her petition, Plaintiff demanded damages in excess of $51 million on each count. In closing argument, Plaintiff requested $36 million in damages.

For its part, Appellant admitted liability and opted not to contest Plaintiff's right to an award of available and proved damages. In closing argument, Appellant conceded Plaintiff was entitled to up to $600,000 to $1 million in damages. Specifically, Appellant argued the lost value of Redmond's financial services and support was approximately $500,000 to $600,000 and the

damages for pain and suffering were no more than the value of the loss of support. From the evidence and the parties' arguments, the jury assessed total damages of $15 million.

The jury had broad discretion in awarding damages, and substantial evidence supported the jury's award. *See Delacroix*, 407 S.W.3d at 36. The verdict is not so excessive as to shock the conscience, and the trial court thus did not abuse its discretion in denying the motion for remittitur. *See Wilkins*, 519 S.W.3d at 544; *Delacroix*, 407 S.W.3d at 37.

Point III is denied.

<u>Point IV</u>

In its fourth point, Appellant argues the trial court erred in allowing Plaintiff to adduce liability evidence and evidence of other damages.

Before considering the merits of Appellant's point, we first address Love's argument that Point IV is multifarious and insufficiently specific. Love argues that Appellant's point "indeterminately cites entire pages of trial testimony," generally complains about the admission of evidence of liability and damages, and fails to specify the allegedly inadmissible evidence, Appellant's objection thereto, and the trial court's erroneous ruling. In response, Appellant argues its point is directed at the trial court's decision to allow the admission of irrelevant liability evidence but admits "it involves more than one ruling." Appellant suggests "it would hardly serve the goal of efficient appellate review to set forth each of multiple rulings permitting the irrelevant evidence question in a separate point."

Rule 84.04 sets forth the requirements of briefs filed in Missouri appellate courts.[3] *City of Harrisonville v. Mo. Dep't of Nat. Res.*, 681 S.W.3d 177, 180–81 (Mo. banc 2023); *Lexow v. Boeing Co.,* 643 S.W. 3d 501, 505 (Mo. banc 2022). "Rule 84.04(d) … requires separate points to

---

[3] All rule references are to the Missouri Supreme Court Rules (2023) unless otherwise indicated.

15

challenge separate rulings or actions." *Lexow*, 643 S.W.3d at 505–06. Consolidating "multiple, independent claims" into a single point relied on is not permitted. *Id.* at 506 (quoting *Kirk v. State,* 520 S.W.3d 443, 450 n.3 (Mo. banc 2017)). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Id.* (quoting *Macke v. Patton*, 591 S.W.3d 865, 869 (Mo. banc 2019)). Noncompliant points relied on can lead to the dismissal of the point. *Harrisonville*, 681 S.W.3d at 182; *Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. E.D. 2021).

Appellant's Point IV states:

THE CIRCUIT COURT ERRED IN ADMITTING EVIDENCE ABOUT LIABILITY AND ELEMENTS OF DAMAGES THAT ARE NOT RECOVERABLE BECAUSE THE EVIDENCE WAS NOT RELEVANT TO ANY ISSUE IN DISPUTE, IN THAT LIABILITY WAS ADMITTED BY FORMAL AMENDMENT TO THE PLEADINGS, AND DAMAGES FOR LOSS OF CONSORTIUM AND GRIEF ARE NOT RECOVERABLE.

Though we sympathize with Appellant's concern for efficient appellate review, the point is multifarious in that it implicates multiple rulings regarding the admissibility of liability evidence and damages for loss of consortium and grief.

Appellant's point additionally violates Rules 84.04(d) and (e) in that the point relied on fails to specify the particular ruling Appellant challenges and the argument section of Appellant's brief fails to include specific references to an objection and associated ruling in the record on appeal. A generalized statement that the trial court erred in admitting evidence is insufficient under Rule 84.04. *See Pickett v. Bostwick*, 667 S.W.3d 653, 660 (Mo. App. W.D. 2023).

While this Court prefers to reach the merits of a case and has "discretion to review noncompliant points gratuitously, overlooking the technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits," *Lexow*, 643 S.W.3d at 508, these

deficiencies impede review on the merits, and we decline to review this point. Effectively, Appellant asks this Court to review the trial transcript line-by-line in search of arguably inadmissible evidence of liability and damages. This we will not do. Reviewing this point as written would require this Court to act as an advocate for Appellant and would render the requirements of Rule 84.04 meaningless. As we explained in *Pearson v. Keystone Temporary Assignment Group, Inc.*, 588 S.W.3d 546 (Mo. App. E.D. 2019): "We cannot become advocates for an appellant by speculating about facts and arguments that have not been made. It is not the function of an appellate court to search the record to identify possible errors and research any issues so revealed." *Id.* at 552 (internal citations omitted).

Because Appellant's Point IV is multifarious and fails to specify any evidence erroneously admitted, we decline to review it.

Point IV is denied.

<u>Point V</u>

In its fifth point, Appellant argues the trial court erred in submitting Instruction 6 to the jury because the instruction contained an incorrect statement of law that the jury may award "any damages" without limitation.

Love contends Appellant has waived appellate review of its claim of instructional error because Appellant was the proponent of Instruction 6, the same instruction Appellant now claims the trial court erroneously submitted to the jury. She is correct.

During the instruction conference, Appellant submitted Instruction 6. Neither Appellant nor Love objected to that instruction. Accordingly, we must deny Appellant's point as a matter of law. "A party cannot complain on appeal of alleged error which his own conduct creates." *Calarosa v. Stowell,* 32 S.W.3d 138, 146 (Mo. App. W.D. 2000). Further, "[a] party cannot lead

the court into error and then employ that error as a source of the complaint." *Reed v. Rope,* 817 S.W. 2d 503, 509 (Mo. App. W.D. 1991); *see also Rouse v. Cuvelier*, 363 S.W.3d 406, 416 n. 6 (Mo. App. W.D. 2013) (quoting *Sprague v. Sea*, 152 Mo. 327, 53 S.W. 1074, 1078 (Mo.1899)) ("Under the invited error rule, 'a party is estopped from complaining of an error of his own creation, and committed at his request.'").

More specifically, Rule 70.03 states, "Counsel shall make specific objections to instructions considered erroneous." Rule 70.03. "No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection." *Id.* Here, neither party objected to Instruction 6, meaning neither Love nor Appellant may assign error to the submission of Instruction 6.

Appellant's Point V also violates Rule 84.04, in that, when "a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." Rule 84.04(e). Appellant's brief only selectively quotes Instruction 6.

Appellant insists that, while applicable law limits recoverable damages to discrete categories, Instruction 6 "commissioned the jury to rove through the evidence and choose anything in it that it believed justified an award of damages." Appellant represents to this Court at page 55 of its brief that Instruction 6 "merely informed the jury that 'you must award Plaintiff such sum as you believe will fairly and justly compensate Candace Love for any damages she and Decedent sustained and Candace Love is reasonably certain to sustain in the future as a direct result of the fatal injury to Casey Redmond.'" Appellant omits several portions of Instruction 6, including the paragraph explicitly admonishing the jury, "You must not consider grief or bereavement suffered by reason of the death." Appellant nonetheless maintains in its reply brief that "the terms of the

18

objectionable instruction were set forth verbatim on page 55 of Osage's brief, in compliance with Rule 84.04(e)."

Putting aside that Appellant was the proponent of Instruction 6, Appellant's failure to set forth the instruction in full in the argument section of its brief as required by Rule 84.04(e) is exemplary of the reasons the rule exists in the first place. Appellant's failure to set forth the instruction in full fails to preserve the point for appeal. *Daniel v. Indiana Mills & Mfg., Inc.*, 103 S.W.3d 302, 311 (Mo. App. S.D. 2003).

For all of these reasons, Point V is denied.

### Point VI

Finally, Appellant argues the trial court erred in entering judgment because a federal district court injunction prohibited the entry of judgment.

Love contends Appellant failed to preserve this point for appellate review because Appellant failed to file any pre- or post-judgment motion objecting to the form or entry of the judgment. *See* Rule 78.07(c) ("In all cases, allegations of error relating to the form or language of the judgment . . . must be raised in a motion to amend the judgment in order to be preserved for appellate review."); Rule 75.01 ("The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time.").

Our review of the record confirms that Appellant failed to file a post-trial motion objecting to the form or entry of the judgment, and thus Point VI is not preserved for our review.[4] *See*

---

[4] Our review of the record includes Appellant's motion to correct and/or supplement the record on appeal, which confirms Appellant did not file any post-trial motion preserving this point for appeal.

19

*Williams v. Williams*, 669 S.W.3d 708, 718 (Mo. App. E.D. 2023) (holding point not specifically raised in post-trial motion pursuant to Rules 78.07(c) and 75.01 was not preserved for appeal).

Point VI is denied.[5]

### Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Cristian M. Stevens, J.

Robert M. Clayton III, P.J., and
Philip M. Hess, J., concur.

---

[5] If we were to reach the merits of Point VI, we would find it frivolous. The federal district court's order clearly and unambiguously stated the court would dissolve its injunction so Love could prosecute her Jones Act claim in the forum of her choosing.

20